UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

# 03 ˜ 12251 MLW

MAGISTRATE JUDGE _Collings_

RICHARD V. NARDO,
    Plaintiff,

v.

JAMES A. NARDO, FRANK A. NARDO,
DANIEL W. NARDO, and FIORE L. NARDO,
    Defendants.

)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO. _51936_

AMOUNT $ _150_
SUMMONS ISSUED _N/A_
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _C.U.M_

## NOTICE OF REMOVAL

    Pursuant to 28 U.S.C. §§ 1441 and 1446, and for the purpose of removing this matter to the United States District Court for the District of Massachusetts, the Defendants, James A. Nardo, Frank A. Nardo, Jr., Daniel W. Nardo, and Fiore L. Nardo state:

1.    <u>State Court Action</u>

    There was commenced, and is now pending in the Superior Court of Middlesex County, Massachusetts, a certain civil action in which the above-named, Richard V. Nardo, is the Plaintiff and James A. Nardo, Frank A. Nardo, Jr., Daniel W. Nardo and Fiore L. Nardo are Defendants. In his Complaint, Richard V. Nardo seeks a preliminary injunction and damages on the theories of Breach of Duty, Breach of Loyalty, Self-dealing, Breach of Contract and Emotional Distress. Each claim relates to the Defendants' actions and conduct pursuant to their duties as trustees of the Richard Nardo Contingent Trust.

2.    <u>Federal Jurisdiction</u>

    This action involves a controversy between citizens of different states pursuant to 28 U.S.C. § 1332(a). The Plaintiff, Richard V. Nardo, is a Massachusetts resident. The Defendants,

James A. Nardo, Frank A. Nardo, Jr., Daniel W. Nardo and Fiore L. Nardo, at all times material hereto, are and have been citizens and residents of the State of Pennsylvania. Said action is of a civil nature, and the amount in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand ($75,000.00) dollars. Therefore, this Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and removal to this Court is proper pursuant to 28 U.S.C. § 1441.

3.    Timeliness of Removal of Petition

The Defendants received notice of this action on November 3, 2003. This notice is filed with the Court within 30 days after receipt by the Defendants of a copy of the initial pleadings setting forth the claim for relief upon which this action is based and, therefore, time for filing this notice under 28 U.S.C. § 1446(b) has not yet expired.

4.    Notice Requirements

Written notice of the filing of this notice will be given to Richard V. Nardo by serving a copy of this notice upon his attorney of record. A true copy of this notice will be filed with the clerk of the Middlesex Superior Court as provided by law.

5.    Relief Requested

The Defendants, James A. Nardo, Frank A. Nardo, Jr., Daniel W. Nardo and Fiore L. Nardo pray that they may effect the removal of this action from the Middlesex Superior Court to this Court.

There is filed herewith, and reference made apart hereof, a true and accurate copy of all

process and pleadings served upon the Defendants in this action.

<div style="margin-left: 40%;">

Defendants,
By their attorney,

JONATHAN BRAVERMAN, ESQ.
BBO # 054740
Baker, Braverman & Barbadoro, P.C.
50 Braintree Hill Park, Suite 108
Braintree, MA  02184
(781) 848-9610

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the Middlesex Superior Court by hand delivery and the attorney of record for each party by first class mail on November 14, 2003.

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX ............, ss
[seal]

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.

**03-4403**

Richard Nardo ..........., Plaintiff(s)

v.

James Nardo, Frank Nardo, Jr.
Peter Nardo, & Daniel Nardo, Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon F. Ty Edmondson

............ plaintiff's attorney, whose address is Frazier Litis LLP

768 Hemenway St, Marlborough MA 01752 ..........., an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at 40 Thorndike Street, Cambridge, MA 02141 either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at 40 Thorndike Street Cambridge

the 31st day of October

............ in the year of our Lord 2003

Edward J Sullivan
Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP — 001

| CIVIL ACTION COVER SHEET | DOCKET No.(s) | Trial Court of Massachusetts Superior Court Department County: _____ |
|---|---|---|

**PLAINTIFF(S)**

Richard V. Nardo

**DEFENDANT(S)** Fiore Nardo; +

James A. Nardo; Frank A. Nardo, Jr., Daniel Nardo

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE**
F. Ty Edmondson, Frazer + Titus LLP
768 Hemenway Street    tel. 508 486 9930
Marlborough, MA 01752
Board of Bar Overseers number: 656139

**ATTORNEY** (if known)

### Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.    TYPE OF ACTION (specify)    TRACK    IS THIS A JURY CASE?

A99 + B04    Negligence: Trustees    (  )    ( ✓ ) Yes    (  ) No

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ TBD
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . $
5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . $
Subtotal $ TBD
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . $ 15,000
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . $
D. Reasonably anticipated future medical and hospital expenses . . . . . . $
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . $
F. Other documented items of damages (describe) indebtedness to others: $ M,000

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
Negligence and trustees' breach of duties has caused harm

$ _____
TOTAL $ . . . . . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):
Trustees' breach of duties under trust has caused actual damages to date and potential damages of up to $400,000 or more

est at this time TOTAL $ 4 . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: _____

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

MIDDLESEX SUPERIOR COURT

RICHARD V. NARDO,

Plaintiff,

Vs.

JAMES A. NARDO, FRANK A. NARDO, JR., DANIEL W. NARDO and FIORE L. NARDO

Defendants.

Civil Action No.:   **03-4403**

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

OCT 27 2003

CLERK

**COMPLAINT**

Plaintiff Richard V. Nardo files this Complaint and alleges as follows:

### Nature of Action

1.  This is an action for tort and contract damages Defendants have caused Plaintiff to suffer. This action also contains a request for injunctive relief.

### Jurisdiction and Venue

2.  This Court has original jurisdiction in this action pursuant to  because the matter in controversy exceeds twenty-five thousand dollars ($25,000), exclusive of interest and costs. This action also seeks injunctive remedies for which original jurisdiction lies in this Honorable Court. Jurisdiction is proper under **223A Mass. § 3** since: (1) the Plaintiff resides in the Commonwealth of Massachusetts;  (2) the tortious injuries were caused to Plaintiff and felt by Plaintiff while Plaintiff was in the Commonwealth; (3) at all relevant times the Defendants acted contractually with Plaintiff while Plaintiff resided in the Commonwealth; and (4) Defendants have all engaged in a regular course of conduct regarding the matters pertaining to this suit

with Plaintiff while Plaintiff has resided in the Commonwealth.

3. Venue is proper pursuant to 223 Mass. § 1 the Plaintiff resides in and has his normal place of business in Middlesex County, Massachusetts.

## The Parties

4. Plaintiff Richard V. Nardo is a citizen of Massachusetts, resident in and regularly conducting his business in Marlborough, Middlesex County.

5. Defendant James A. Nardo is a citizen of Pennsylvania and resident in the town of Hershey.

6. Defendant Daniel W. Nardo is a citizen of Pennsylvania and resident in the town of Red Lion.

7. Defendant Frank A. Nardo, Jr. is a citizen of Pennsylvania and resident in the town of Lancaster.

8. Defendant Fiore L. Nardo is a citizen of Pennsylvania and resident in the town of Lancaster.

## Background

9. Plaintiff is the contingent beneficiary to the Richard Nardo Contingent Trust ("Trust"). A copy of the Trust formation document is attached hereto as Exhibit A and incorporated fully herein. The Trust was established pursuant to the Will of Frank A. Nardo, Sr. who died on August 7, 2001. The goal of the Trust is to distribute to Plaintiff the assets of the Trust, subject to Plaintiff meeting certain requirements related maintaining his current sobriety and drug-free status. See Trust Article V(A). The Trust requires the siblings of Plaintiff, including the Individual Trustees of the Trust, to encourage Plaintiff in his sobriety and drug-free status. See Trust Article V(C).

2

10. The Trust names the Defendants, together with a corporate trustee ("Corporate Trustee"), as the Trustees of the trust. The Trust specifically identifies each of the Defendants herein as an Individual Trustees as defined in the Trust (as opposed to the Corporate Trustee). Each of the Defendants is currently serving as an Individual Trustee of the Trust.

11. As of August 29, 2003, the corpus of the Trust was $94,621.74, as reported by the Corporate Trustee, and is expected to total in excess of $400,000 once final mandatory contributions to it have been completed. See Second Intermediate Account attached as Exhibit B and incorporated fully herein.

12. The Trust gives each of the Trustees of the Trust an equal vote on whether Plaintiff is to receive a distribution under the Trust. Trust Article V(A)(1) of the Trust states:

> "Upon the...satisfaction of a majority of [the] Trustees of [Plaintiff]'s drug and alcohol-free status for a consecutive five year period, my Corporate Trustee shall distribute on-half [sic] (1/2) of the total corpus and accumulated income of the Trust to [Plaintiff].... The aforementioned determinations of a majority of my Trustees shall be in the said Trustees' exclusive and absolute discretion, subject to whatever tests or other proof that the said Trustees deem appropriate and shall not be subject to review...."

13. The Trust's terms requires that, should the a majority of the Trustees fail to vote Plaintiff has met these requirements, the corpus of the Trust will be distributed to the surviving children of the Trust's grantor, Frank A. Nardo, Sr. For example, Article V(A)(2) of the Trust states:

> "If Richard [Plaintiff]...fails to establish an initial five year period of sobriety prior to his death, the balance of the Trust principal and accumulated income

*shall pass to my then surviving children, per capita;"*

14. All of the Individual Trustees are children of Frank A. Nardo, Sr. and would benefit both directly and indirectly from the distribution of the Trust corpus to the Successor Beneficiaries.

15. The Individual Trustees are also granted the power to make any distribution of corpus to support Plaintiff's expenses during the pendency of the Plaintiff's evaluation period. The Corporate Trustee does not have a vote with regard to these issues, rather, according to Article V(B) of the Trust:

   *"...a majority of [the] Individual Trustees may direct [the] Corporate Trustee to make distributions of principal and income in order to provide for [Plaintiff's] reasonable living expenses."*

16. Thus the four Individual Trustees, the named Defendants herein, must vote 3-1 in order to distribute funds to Plaintiff pursuant to the terms of Article V(B) of the Trust.

17. In 2001, after Frank A. Nardo, Sr.'s death, Plaintiff requested the Trust to disperse funds to cover a trip to Plaintiff's rehabilitation center (Antigua Crossroads) so that Plaintiff could continue his efforts at maintaining his sobriety. This request was denied by Defendant Frank A. Nardo, Jr. acting for the Trust in his capacity as an Individual Trustee.

18. As a proximate result of the refusal by the Defendants to support his rehabilitation efforts, Plaintiff relapsed in February 2002. Defendants, acting as Individual Trustees, refused to communicate with Plaintiff and refused financial support to the Plaintiff with regard to Plaintiff's efforts to re-establish his sobriety. Instead, and as a direct result of the refusal of the Individual Trustees to comply with the terms of the Trust, Plaintiff had to rely upon other family members and friends for loans to go into

long-term care. Plaintiff has incurred substantial debts to those individuals as a result of the refusal of the Defendants to support his efforts at sobriety. Plaintiff has also incurred substantial embarrassment and emotional harm as a result of having to rely on the charity of others as a result of the Individual Trustees abdicating their duty under the Trust. Plaintiff also lost income for the period of time he was in detoxification and suffered harm to his overall business interests and reputation.

19. In January 2003, Defendant and Individual Trustee Daniel W. Nardo told Plaintiff that Defendant measured the obligation to act or not act as a Trustee "by whether Dad [Frank A. Nardo, Sr.] would have wanted it." In several conversations since, this same standard of whether to act has been re-stated at various times by all Defendants. Individual Trustee Daniel W. Nardo has also stated to Plaintiff that he, Daniel, does not believe Plaintiff "deserved" to be included in Frank A. Nardo, Sr.'s estate.

20. In April 2003, Defendant Frank A. Nardo, Jr. stated to Plaintiff that all the children of Frank A. Nardo, Jr. had to agree on any disbursement to Plaintiff.

21. On June 1, 2003, Defendant Frank A. Nardo, Jr. submitted a request to consider a distribution to Plaintiff in line with Article V(B) of the Trust. This request asked all of the children of Frank A. Nardo, Sr. to vote on certain matters including the distribution of funds. Despite the fact that three of the children were not Individual Trustees, they were nonetheless permitted to vote on the decision of whether to release funds to Plaintiff in violation of the specific instructions of the Trust.

22. Having received no written response to the letter of June 1, 2003, from any Individual Trustee (or even those children of Frank A. Nardo, Sr. who were improperly solicited for a vote), Plaintiff's counsel sent out a letter dated July 9, 2003 to Defendants asking for written confirmation of their votes with respect to distributing money from

the Trust to cover a substantial portion of the arrearages of Plaintiff in his child support payments and eliminate the danger of Plaintiff suffering penalties for failure to make child support payments.   No disbursement was approved by the Defendants and no adequate response to the request was received.

23. On August 11, 2003, counsel for Plaintiff wrote to each Individual Trustee and highlighted that they were inappropriately conflicted with respect to their simultaneous status as Individual Trustees with the power to determine whether a distribution, if any, should ever be made to Plaintiff which simultaneously retaining successor beneficiary status in the Trust.  In addition, the Defendants were notified of their improperly managing the Trust and improper service as Trustees.  No response from any Defendant has been received.

24. Plaintiff hereby states he is not challenging (and does not challenge) the validity of the will of his father, Frank A. Nardo, Sr., the Frank A. Nardo, Sr. Trust nor the Richard Nardo Contingent Trust.   This action seeks recompense of damages incurred by the misadministration of the Richard Nardo Contingent Trust by its Individual Trustees since the time of its founding.

### Count One

### (Breach of Duty of Loyalty – Conflict of Interest)

25. Plaintiff repeats the allegations set forth in paragraphs 1 through 24.

26. Defendants have violated the duty of loyalty each owed to Plaintiff, the Trust beneficiary, by way of accepting and then maintaining Individual Trustee status while simultaneously having successor beneficiary rights in the Trust.

27. As a direct result of Defendants' breaches of this duty, Plaintiff has suffered substantial injury, including, but not limited to: failing to receive payments to support

Plaintiff's sobriety and incurring indebtedness to fund same; the inability receive $12,000.00 in support payment from the Trust; attendant exposure to penalties for failure to make child support payments; lost income; emotional distress and potential future loss and use of the Trust corpus due to the continuing conflict of interest.

### Count Two

### (Breach of Duty to Inform and Report)

28. Plaintiff repeats the allegations set forth in paragraphs 1 through 24.

29. Defendants have violated the duty to inform and report that each owe to Plaintiff, the Trust beneficiary, in their failure to adequately respond to inquiries and requests to vote both from Frank A. Nardo, Jr. and Plaintiff.

30. As a direct result of Defendants' breaches of this duty, Plaintiff has suffered substantial injury, including, but not limited to: failing to receive payments to support Plaintiff's sobriety and incurring indebtedness to fund same; the inability receive $12,000.00 in support payment from the Trust; attendant exposure to penalties for failure to make child support payments; lost income; emotional distress; and potential future loss and use of the Trust corpus due to the continuing failure to inform and report.

### Count Three

### (Breach of the Duty of Loyalty)

31. Plaintiff repeats the allegations set forth in paragraphs 1 through 24.

32. Defendants have violated the duty of loyalty each owed to Plaintiff, the Trust beneficiary, in their failure to adequately respond to inquiries and requests to vote both from Frank A. Nardo, Jr. and Plaintiff.

33. As a direct result of Defendants' breaches of this duty, Plaintiff has suffered

substantial injury, including, but not limited to: failing to receive payments to support Plaintiff's sobriety and incurring indebtedness to fund same; the inability receive $12,000.00 in support payment from the Trust; attendant exposure to penalties for failure to make child support payments; lost income; emotional distress and potential future loss and use of the Trust corpus due to the continuing breach of this duty.

<div align="center">

**Count Four**

**(Breach of Duty to Administer Trust)**

</div>

34. Plaintiff repeats the allegations set forth in paragraphs 1 through 24.

35. Defendants have violated the duty to administer the Trust each owed to Plaintiff, the Trust beneficiary, in their failure to adequately respond to inquiries both from Frank A. Nardo, Jr. and Plaintiff.

36. As a direct result of Defendants' breaches of this duty, Plaintiff has suffered substantial injury, including, but not limited to: failing to receive payments to support Plaintiff's sobriety and incurring indebtedness to fund same; the inability receive $12,000.00 in support payment from the Trust; attendant exposure to penalties for failure to make child support payments; lost income; emotional distress and potential future loss and use of the Trust corpus due to the continuing breach of this duty.

<div align="center">

**Count Five**

**(Self Dealing)**

</div>

37. Plaintiff repeats the allegations set forth in paragraphs 1 through 24.

38. Defendants have violated the duty of loyalty each owed to Plaintiff, the Trust beneficiary, by way of accepting and then maintaining Individual Trustee status while simultaneously having successor beneficiary rights in the Trust constitutes improper self-dealing.

39. As a direct result of Defendants' breaches of this duty, Plaintiff has suffered substantial injury, including, but not limited to: failing to receive payments to support Plaintiff's sobriety and incurring indebtedness to fund same; the inability receive $12,000.00 in support payment from the Trust; attendant exposure to penalties for failure to make child support payments; lost income; emotional distress and potential future loss and use of the Trust corpus due to the continuing breach of this duty.

### Count Six

### (Violation of Primary Duty to Beneficiary)

40. Plaintiff repeats the allegations set forth in paragraphs 1 through 24.

41. Defendants have violated the duty of loyalty each owed to Plaintiff, the Trust beneficiary, by failing to administer the trust solely in the interests of the Plaintiff (beneficiary).

42. As a direct result of Defendants' breaches of this duty, Plaintiff has suffered substantial injury, including, but not limited to: failing to receive payments to support Plaintiff's sobriety and incurring indebtedness to fund same; the inability receive $12,000.00 in support payment from the Trust; attendant exposure to penalties for failure to make child support payments; lost income; emotional distress; and potential future loss and use of the Trust corpus due to the continuing breach of this duty.

### Count Seven

### (Breach of Duty to Administer Trust and Duty of Loyalty)

43. Plaintiff repeats the allegations set forth in paragraphs 1 through 24.

44. Defendants have violated the duty to administer the Trust each owed to Plaintiff and the duty of loyalty each owed to Plaintiff, the Trust beneficiary, by failing to properly administer the Trust to the benefit of the Plaintiff, by ignoring their duty of loyalty to

the Plaintiff as beneficiary and by improperly substituting other standards of measurement of their duties contrary to the instructions contained in the Trust.

45. As a direct result of Defendants' breaches of this duty, Plaintiff has suffered substantial injury, including, but not limited to: failing to receive payments to support Plaintiff's sobriety and incurring indebtedness to fund same; the inability receive $12,000.00 in support payment from the Trust; attendant exposure to penalties for failure to make child support payments; lost income; emotional distress; and potential future loss and use of the Trust corpus due to the continuing breach of this duty.

### Count Eight

### (Emotional and Other Distress)

46. Plaintiff repeats the allegations set forth in paragraphs 1 through 24.

47. As a direct result of the actions and inactions of the Defendants, Plaintiff has suffered emotional and other distress particularly as a result of having relapsed, had to undergo additional rehabilitation.

### Count Nine

### (Lost Income)

48. Plaintiff repeats the allegations set forth in paragraphs 1 through 24.

49. As a result of having relapsed, Plaintiff lost valuable income for a substantial portion of 2001 and 2002 which is directly attributable to actions and inactions of the Defendants.

### Count Ten

### (Contract and Tort Claims)

50. Plaintiff repeats the allegations set forth in paragraphs 1 through 24 and Counts One

through Eight.

51. Each of the counts One through Seven, above, sound both in contract and tort.

## Count Eleven

### (Request for Preliminary Injunction)

52. Plaintiff repeats the allegations set forth in paragraphs 1 through 24.

53. As a result of the various breaches of their duties of loyalty, duty to administer the Trust and other contractual and tortious acts, Plaintiff hereby requests that the Court issue an injunction prohibiting the Defendants from using the corpus of the Trust or any funds which should be added to the corpus of the Trust, in defense of the claims contained herein;

54. Should the Defendants be able to use such funds to pay for the costs of the defense of these claims, the harm to Plaintiff would be immediate and irreparable. Not only would money that should go to the Plaintiff be directed to attorneys employed by the Defendants, the prolongation of this matter before the court would cause Plaintiff to be exposed to penalties for failure to make child support payments including custodial remedies.

## Count Twelve

### (Request for Preliminary Injunction)

55. Plaintiff repeats the allegations set forth in paragraphs 1 through 24.

56. As a result of the various breaches of their duties of loyalty, duty to administer the Trust and other contractual and tortious acts, Plaintiff hereby requests that the Court issue an injunction prohibiting the Defendants from acting as Independent Trustees while this litigation is pending;

57. Given the continued and ongoing violation of their duties by the Individual Trustees,

Plaintiff is at risk that the Trust corpus or interest will be mismanaged, misappropriated or otherwise will be harmed by the ongoing involvement of the Trustees with regard to the Trust during the time this litigation is pending.

WHEREFORE, Plaintiff Richard V. Nardo demands judgment as follows:

1.  Damages as a result of the above torts, breaches of contract and breaches of equitable duties in an amount to be determined at trial;

2.  The removal of all Individual Trustees from their duties as trustees under the Trust;

3.  An immediate preliminary injunction prohibiting any Defendant from using the corpus of the Trust, or any amount which should be added to the corpus of the Trust, in defense of the claims contained herein as well as an immediate preliminary injunction prohibiting the Individual Trustees from exercising any power over the Trust and that the Corporate Trustee act as sole trustee until this litigation is resolved;

4.  Payment to Plaintiff of all lost income as well as all costs and debts incurred as a result of refusals by the Individual Trustees to support his sobriety and for reasonable requests for expenses in the best interest of Plaintiff which have been refused or ignored by the Individual Trustees;

5.  Damage for the emotional distress suffered by Plaintiff as a result of the actions and inactions of the Defendants;

6.  Costs incurred by Plaintiff as a result of the actions and inactions of the Defendants, including but not limited to the costs of this litigation, reasonable attorneys fees; and expenses;

7.  Punitive damages as permitted both in tort and contract;

8.    Prejudgment and post-judgment interest; and

9.    Such other relief that this Court deems appropriate or just, in law or in equity.

**Plaintiff demands a trial by jury on all counts.**


Dated:  October 24, 2003                 FRAZOR & TITUS LLC


                                         By:  _F. Ty Edmondson_____
                                              F. Ty Edmondson (MA#656139)

                                         768 Hemenway Street
                                         Marlborough, MA 01752
                                         Tel. 508-486-9950

                                         Attorney for Plaintiff RICHARD V.
                                         NARDO.

EXHIBIT A

# Last Will and Testament
# of Frank A. Nardo, Sr.

I, Frank A. Nardo, Sr., of York County, Pennsylvania, being of sound and disposing mind, memory, and understanding, do hereby declare this as and for my last will and testament hereby revoking all wills and codicils previously made by me.

I begin by noting for the sake of my family that I have asked my son, Frank, to draft this my last will and testament, as I view this act to be a profoundly personal one and I am most comfortable with my son performing this service for me rather than anyone else. I assure all of you that what is contained in this my last will and testament are my desires which Frank has put into words. If any of my sons or daughters have difficulty with what Frank has done for me, your argument is with me, not your brother.

## First

I direct the payment of my debts and expenses of my last illness and funeral from my estate as soon after my death as conveniently may be done. If there be no cemetery lot available for my interment, owned by me at the time of my death, I authorize my personal representatives to purchase such cemetery lot with a contract for perpetual care, using therefor funds from my estate, in such amount as my personal representatives shall consider necessary and desirable, and I authorize my personal representatives to cause title to or ownership of such lot so purchased to be vested in such person as my personal representatives shall designate. Further, I authorize my personal representatives to expend funds from my estate, in such amount as my personal representatives shall consider necessary and desirable, for the purchase, erection, and inscription of a suitable marker for my grave.

## Second

I give and bequeath my 1996 Chevrolet Blazer unto my son, Daniel W. Nardo.

Not unmindful of Joyce E. Keesey, I hereby again ratify in all respects my execution of my October 10, 2000 agreement, with her, and I believe I have provided fully and amply for Joyce at the time of the execution of the said agreement.

## Third

I direct that all the rest, residue and remainder of my tangible personal property owned by me at the time of my death, together with all insurance pol... thereon ... ... ... and the proceeds ... ... ... ... ... in my residuary estate

10-13-2000
Frank A Nardo, Sr

and to be distributed pursuant to the terms contained in Article "Fourth", below.

## Fourth

I give, devise and bequeath all the rest, residue and remainder of my estate unto all my children who survive me at the time of my death per capita and not per stirpes. All of my then-surviving children shall take equal shares, share and share alike and outright except for any share which may be due my son, Richard Nardo, which said share shall be subject to the provisions which follow in Article "Fifth".

Out of fairness to all, I have not specifically devised any real property which I now own, but I would like my remaining real property to be offered to those of my children who are most likely able to continue the work that I have begun. I hereby direct that my personal representatives provide the following children of mine: Frank A., Jr., James A., Daniel W., the right of first refusal to purchase the property I own at the time of my death for a proposed purchase price which shall be equal to the value established, used, and approved by the taxing authority, for federal and state inheritance tax purposes, with the right of first refusal for each parcel being granted to my afore named children upon the following procedure: The order that each parcel shall be offered shall be determined by assigning a number to each parcel and the order established randomly by casting lots. Each parcel shall then be offered at the said purchase price, in the said order of parcels, to my afore named children in the following order: For the first parcel offered, each of my afore named children shall be assigned a number, and the order of right of first refusal being determined randomly by casting lots, with the successive parcels being offered in the randomly determined order until all parcels are either agreed to be purchased or rejected. If a named child agrees to purchase or rejects the parcel, that child shall go to the then last place on the list for purposes of the offer of the next parcel. The next parcel shall be offered to the child who is then first on the randomly determined ordered list. For purposes of this provision, any real property I own consisting of more than one contiguous parcels, specifically but not necessarily limited to the real property of contiguous parcels I own in York Township, the contiguous parcels shall constitute one parcel and offered for sale to my afore named children as if one parcel. My personal representatives shall offer for sale the real estate I own at the time of my death in the foregoing manner, as soon as practicable after my death. If my afore named children fail to exercise their right of first refusal to purchase any parcel or parcels of real property owned by me at the time of my death, I hereby direct that the said property be then offered in the same manner to any of my remaining children who may be interested in so purchasing the said real property. If any such real property remains unsold, I direct that the same be offered for sale to the public at the highest price which may be expected for each parcel and without regard to the contiguous nature of multiple parcels. Any child exercising his right of first refusal and desiring to purchase any such real property shall be required to purchase the real property at the said purchase price; further, any amounts otherwise due the said child under this my Last Will and Testament shall be held as a refundable deposit against said purchase price, and the balance of the said purchase price shall be arranged by the purchasing child within six (6) months of the date of my death. Conveyance of any of the parcels of property shall not occur until such time as the federal and state inheritance tax returns have been approved, unless the purchasing child(ren) enter into an agreement with and provide a mortgage on the said property to my Estate guaranteeing reimbursement to the Estate any amounts due in inheritance and estate taxes as a result of an undervaluation of the parcel for such tax purposes of the real property the purchasing child(ren) is(are) purchasing. Should any purchasing child on a mortgage arrange within six (6) months of the date of my

death, to the satisfaction of my personal representatives, for full payment of the balance of the said purchase price, the property shall be offered for sale again to (i) the remaining afore named children, then (ii) my remaining children, then (iii) the general public, Any deposit monies on account of a child attempting to purchase but who is unable to close a sale of such property shall be distributed to the said child, as if the said child had not attempted to make the purchase. To reiterate, the purchasing children shall be responsible for the payment of any unpaid inheritance, estate or other similar death taxes due to the undervaluation, for such tax purposes, of the property which the respective children are purchasing.

### Fifth

Understanding the danger inherent in placing property in the hands of one in the grips of an addiction, if my son Richard survives me in death, any share of my estate to which Richard is entitled I hereby give, devise and bequeath to First Union, N.A., or its successor in interest, (alternately herein, "Corporate Trustee") IN TRUST HOWEVER, and to act as Co-Trustee with my children, Fiore L.; Frank A., Jr.; James A.; and Daniel W.; (alternately and jointly herein, "Individual Trustees") upon the following terms and conditions:

A.    This Trust shall continue only during the natural life of Richard and it shall be known as "The Richard Nardo Contingent Trust". My Corporate Trustee, First Union Bank, N.A., shall hold the trust principal and any income for Richard's benefit and until whichever of the following events first occurs:

    I.    At such time as Richard establishes to the satisfaction of a majority of my Trustees that Richard has remained illicit drug and alcohol-free for a period of five (5) consecutive and uninterrupted years, whenever the same may occur and without regard to however many years it takes Richard to maintain his sobriety for the five consecutive years.

Upon the aforementioned satisfaction of a majority of my Trustees of Richard's drug and alcohol-free status for a consecutive five year period, my Corporate Trustee shall distribute on-half (½) of the total corpus and accumulated income of the Trust to Richard. The remaining balance of the Trust and the income accumulating thereto shall remain in trust for one additional five (5) year period during which a majority of my Trustees shall again determine that Richard remains drug and alcohol-free for the entire subsequent five (5) year period. If Richard is able to maintain his sobriety for the subsequent five (5) year period, my Corporate Trustee shall distribute the entire balance of the Trust to Richard with my hopes that he has, by then, established the character necessary to live the balance of his life sober.

The aforementioned determinations of a majority of my Trustees shall be in the said Trustees' exclusive and absolute discretion, subject to whatever tests or other proof that the said Trustees deem appropriate and shall not be subject to review or otherwise expose my Trustees, or any of them, to any liability to Richard, my other children, or anyone else for my Trustees' good faith exercise of discretion in making the aforesaid determinations.

Finally, I note that I understand that whatever proof is demanded may
not be infallible, but is undertaken with my concern for and with
Richard's best interests at heart.                                    OR

2.  If Richard predeceases the occurrence of the condition in
    subparagraph "1." in that he fails to establish an initial five year
    period of sobriety prior to his death, the balance of the Trust
    principal and accumulated income shall pass to my then
    surviving children, per capita;                  OR

    if Richard establishes his initial five year period of sobriety
    but, in the determination of a majority of my Trustees fails in
    his sobriety in the subsequent five year period, the then
    accumulated balance of the Trust shall likewise pass to my
    then-surviving children, per capita;             OR

    if Richard establishes his sobriety for the first five years but
    predeceases his completion of the subsequent five year period
    and he dies sober, the accumulated balance of the trust shall
    pass to Richard's estate.

B.  Further, if, in the determination of a majority of my Individual
    Trustees, Richard is sober and is making progress to the goals outlined
    above, a majority of my Individual Trustees may direct my Corporate
    Trustee to make distributions of principal or income in order to
    provide for Richard's reasonable living expenses. Such a
    determination shall be in the sole and absolute discretion of a majority
    of my Individual Trustees. It is my intention that in exercising
    discretion with regard to any distribution hereunder of principal or
    income, my Individual Trustees shall consider funds available to
    Richard from all sources. These expenses may include: shelter,
    provided however, that, if real estate is purchased, the title to said real
    estate shall remain vested in my Corporate Trustee until such time as
    all other conditions of this Trust are fulfilled; lease payments for
    shelter; food; medical care; counseling; drug rehabilitation expenses,
    provided all other conditions herein are met; and education expenses.
    To the extent practicable, my Corporate Trustee is directed to make
    such distributions hereunder directly to the provider of such property
    or service and not to Richard.

C.  Richard's brothers and sisters should encourage Richard in his
    endeavor to remain sober. If Richard fails in his pursuit of sobriety
    and his failure has been aided by a brother or sister, that brother or
    sister shall forfeit any right, title or interest that he/she may otherwise
    have as a contingent remainderman in this Trust.

D.  I hereby grant my Corporate Trustee the power, without court
    approval, to terminate this Trust if the principal and any accumulated
    or undistributed income is of an amount which my Corporate Trustee
    deems to be too small to practically remain in trust. In this event, my
    Corporate Trustee is authorized to make immediate distribution to
    my personal representatives who are authorized to further distribute
    the property to Richard, or use it for Richard's benefit, as my
    personal representatives deem appropriate and consistent with the
    intention of the terms set forth in this Article hereof.

E.  Any corporate fiduciary serving hereunder shall receive compensation for its services hereunder in accordance with a fee agreement entered into between it and me during my lifetime, or if there is no such agreement, the corporate fiduciary shall receive compensation in accordance with its Schedule of Fees in effect from time to time during the period in which its services are performed.

F.  All shares of principal and income held in trust shall be held and disbursed free from anticipation, assignment, pledge, or obligation of the beneficiaries and any of them, and shall not be subject to any execution, attachment, levy or sequestration or other claims of the creditors of the said beneficiaries or any of them.

G.  In addition to the powers enumerated in Article "Eighth" in my Will dated April 22, 1999, I hereby grant my Corporate Trustee the power to invest and reinvest in all forms of property without being confined to legal investments and without regard for the principal of diversification. It is my intention that my Corporate Trustee will make such investment decisions giving due consideration to the input of a majority of my Individual Trustees.

H.  Except for instances of willful misconduct, recklessness, or gross negligence, I expressly relieve my Trustees, Corporate or Individual as appropriate to their respective positions, of any liability or responsibility whatsoever for any act or failure to act by, or for following the advice of such accountants, agents, attorneys, investment counsel, brokers, bank or trust company, so long as my Trustees exercise due care in their selection.

I.  Upon the written request of a majority of my Individual Trustees of any trust hereunder then serving, delivered to the Corporate Trustee then serving, the Corporate Trustee of such trust shall promptly resign; provided that the Individual Trustees, must appoint a corporation as successor trustee that is (i) organized under the laws of the United States or any State thereof, (ii) possessed of trust powers, and (iii) has trust assets of at least One Hundred Million Dollars ($100,000,000). Any power of appointment and removal under this Paragraph shall not be extinguished by a single exercise; provided that the power to remove a corporate trustee shall not be exercised more frequently than once every two years.

J.  Any Trustee while serving hereunder may resign without court approval by written notice delivered to the co-Trustees and to Richard. In the case of my Corporate Trustee, such notice shall be provided thirty (30) days in advance of the effective date of the resignation. Should a corporate trustee serving hereunder provide the Individual Trustees notice of resignation, a majority of my Individual Trustees shall appoint a successor corporate trustee which meets the requirements outlined in Paragraph "I", above. The corporate trustee's resignation shall be complete upon transfer of all remaining trust assets to the newly appointed corporate trustee.

No Trustee taking office shall be liable in any way for the acts or

omissions of any Trustee prior to such Trustee's assumption of office and shall have no duty to review the performance of a Trustee prior to that time.

L.    Each Individual Trustee of any trust hereunder then serving may appoint in writing an individual to serve in his or her place; provided that any such appointment shall be that of one of my children, excluding Richard.

M.    Any inconsistencies which arise in the interpretation of this trust document or which arise in its implementation shall be resolved in favor of my intent to encourage Richard's sobriety and consistent with the other terms and provisions contained herein. Should any provision of this Trust be deemed to be contrary to law or policy, the same shall be stricken or otherwise conformed to such law or policy.

N.    I reiterate that the foregoing trust provisions apply to and control only the share which may be due my son Richard Nardo, all other shares of my residuary estate shall pass outright and without restriction.

I note here to Richard that my first inclination was to provide you with nothing, for fear that doing so would only serve to prolong your addiction and waste more of what you have already wasted and which I have worked so hard to obtain. Your brother, Frank, has helped me construct a plan which, hopefully, will provide an incentive to you to clean yourself up.

## Sixth

All shares of principal and income hereby given shall be free from anticipation, assignment, pledge, or obligation of the beneficiaries and any of them, and shall not be subject to any execution, attachment, levy or sequestration or other claims of the creditors of the said beneficiaries or any of them.

## Seventh

I direct that any and all Inheritance, Estate and Transfer Taxes imposed upon my estate passing under my will or otherwise, including but not limited to those said taxes accruing due to property transferred pursuant to the "Frank A. Nardo, Sr. Trust Number One", shall be paid out of the principal of my residuary estate. I limit the foregoing only in that I intend that any Generation Skipping Tax Liability incurred by my estate shall be paid by the Skip Persons taking hereunder, by trust, or otherwise, and said Generation Skipping Tax amount shall be deducted pro rata from each Skip Person's distribution whether passing by will, trust, or otherwise.

## Eighth

My personal representatives, trustee, and their successors, shall have the following powers, in addition to those vested in them by law, or as set forth or limited elsewhere in this document, as appropriate to their respective positions and as otherwise set forth, limited or modified in this my last will and testament, applicable to all property, whether principal or income, including property held for minors, exercisable without court approval, and effective until actual distribution of all property

A.  to retain in the form received, and to sell either at public sale or private sale any real or personal property;

B.  to manage, mortgage, lease, option, **divide**, alter, repair, and improve real property and generally to exercise all rights of real estate ownership;

C.  to invest and reinvest in all forms of property, but I do intend that any investments made by my <u>personal representatives</u> on behalf of my estate be those confined to legal **investments**;

D.  to exercise any option or rights arising from ownership of investments;

E.  to compromise claims without court approval and without consent of any beneficiary;

F.  to borrow money and to pledge any real or personal property as security for the repayment thereof;

G.  to continue the operation of my real estate development business to the extent that it may be necessary, and I hereby grant my personal representatives all the powers necessary for the conduct of the said business until the same may be liquidated or otherwise disposed of in accordance with my wishes contained herein, which said powers shall include, but not specifically be limited to, the aforesaid powers contained herein this Article "Eighth";

H.  to employ accountants, agents, attorneys, investment counsel, brokers, bank or trust company and to pay a reasonable fee for their services. I direct, however, that it is my intent that my <u>personal representatives</u> retain the services of Judy Doviak with the accounting firm of Kuhn and Doviak, York, PA, to perform any and all accounting functions relative to my estate, including as may be necessary for the conduct of the operation of my business; Judy has been very helpful, fair and honest throughout my years in business. It is also my intent that my <u>personal representatives</u> retain the services of Ed Roberts, Esquire, of York, PA, as the attorney for my estate and to perform any legal functions as may be necessary to the conduct of my business, provided, however, that he enter into a reasonable fee agreement with my personal representatives, of which my personal representatives shall look to my son, Frank, for direction in this specific regard. I trust that Ed will handle my estate fairly, honestly, competently, and with the best interest of all my children at heart.

I.  To distribute in cash, in kind, or partly in each, and to cause any share to be composed of cash, property, or undivided fractional shares in property different in kind from any other share.

## Ninth

To the extent I am able by law, I direct that no trustee, personal representative, guardian, or other fiduciary named, nominated, or appointed in this, my last will and testament, shall be required to post any bond or give any security of any type for any purpose whatsoever and in any jurisdiction.

## Tenth

If any beneficiary or remainderman under this Will in any manner, directly or indirectly, contests or attacks this Will or any of its provisions, or objects to the accounts or actions of my fiduciaries, without probable cause, such beneficiary shall pay all costs, including but not limited to attorneys fees, arising in connection

with such contest, attack or objection incurred by my estate, such trust or such fiduciary personally. In the event that such beneficiary does not prevail in such action, any share or interest in my estate or such trust which would otherwise pass to such beneficiary or remainderman under this Will shall be revoked and the property consisting of such share shall be disposed of in the manner provided herein as if that contesting beneficiary or remainderman had predeceased me. I add here that I understand completely the import of this paragraph and I intend that it be implemented fully and to the extent allowable by law. I have done my best for my family, and I feel that I owe no one anything and certainly no one any more or less that I have herein provided. Further, I can think of no less-deserving persons to share in what I have worked so hard for than the attorneys who would profit needlessly from such a will contest.

## Eleventh

Finally, I nominate, constitute, and appoint my daughters, Rosemary Frederick and Diann Cardello, as Co-Executrixes of this my last will and testament. It is my intent that Rose and Diann act jointly and with my interest and the interest of all my sons and daughters at heart. I further intend that Rose and Diann have the support and input of their brothers in fulfilling their duties as co-Executrixes, and I am confident that they will be able to work together and in concert. In the event of either daughter's death, resignation, renunciation, or inability to act for any reason whatsoever as my co-executrix, I intend that the surviving or otherwise able and willing daughter to act alone as my Executrix. As I intend their responsibilities to be carried out with the aid of my sons, and the attorney and accountant for the estate, I hereby direct that Rose and Diann each receive the sum of $10,000.00 as their compensation as my personal representatives.

In Witness Whereof, I have hereunto set my hand and seal to this my Last Will and Testament, consisting of eight (8) typewritten pages, including this page, but not including the page following which bears the acknowledgment and affidavit; the first seven (7) pages of which bear my signature and this date in the left margin for the purpose of identification, this 13th day of October, 2000.

_Frank A. Nardo_
Frank A. Nardo, Sr.

Signed, sealed, published, and declared by the above named testator, as and for his last will and testament in the presence of us, who, at his request, in his sight and presence, and in the sight and presence of each other, have hereunto subscribed our names as witnesses.

_Judith A Doviak_     residing at 2093 HOLLYWOOD DR, YORK, PA 1746
JUDITH A DOVIAK

_Victoria L. Everhart_     residing at 3053 FAITH DR, Y    6/10/5

## ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA, COUNTY OF YORK

I, Frank A. Nardo, Sr., the testator whose name is signed to the attached or foregoing instrument, having been duly qualified according to law, do hereby acknowledge that I signed and executed the instrument as my Last Will; and that I signed it willingly and as my free and voluntary act for the purposes therein expressed.

Sworn to or affirmed and subscribed and acknowledged before me by Frank A. Nardo, Sr., the testator, this 13th day of October, 2000.

_____
Frank A. Nardo, Sr.

_____
Notary Public

NOTARIAL SEAL

## AFFIDAVIT

COMMONWEALTH OF PENNSYLVANIA, COUNTY OF YORK

We, (or I) JUDITH A. DOVIAK _____, and

VICKIE L. EISENHART, the witness(es) whose name(s) are signed to the attached or foregoing instrument, being duly qualified according to law, do depose and say that we were (I was) present and saw the testator sign and execute the instrument as his Last Will; that the testator signed willingly and executed it as his free and voluntary act for the purposes therein expressed; that each subscribing witness in the hearing and sight of the testator signed the will as a witness; and that to the best of our (my) knowledge the testator was at that time 18 or more years of age, of sound mind and under no constraint or undue influence.

Sworn to or affirmed and subscribed to before me by JUDITH A DOVIAK and VICKIE L. EISENHART witness(es), this

13th day of October, 2000

_____
Witness

_____
Witness

_____
Notary Public

EXHIBIT B

Petition for Adjudication

Testate Estate

## In the Court of Common Pleas of York County, Pennsylvania,
## Orphans' Court Division

ESTATE OF **Frank A. Nardo**, Sr., a/k/a
**Francis Anthony Nardo**, a/k/a
**Frank A. Nardo, Deceased**

No. 67-01-01157

**Late of Springettsbury Township
York County, Pennsylvania**

COPY

The Second and Intermediate Account of Diann Cardello and Rosemary Frederick, Co-Executrices was filed in the Office of the Register of Wills of York County on August 29, 2003 and advertised for audit on October 1, 2003.

The petition of Diann Cardello and Rosemary Frederick, Co-Executrices,

## Respectfully Represents:

That the said testator died on August 7, 2001, testate, married, and leaving to survive a spouse named Joyce E. Keesey-Nardo.

That the will dated October 13, 2000, and codicils dated October 14, 2000, and October 28, 2000 were duly admitted to probate in the Office of the Register of Wills of York County on August 13, 2001, and copies of the same are hereto attached.

That letters of testamentary were issued on August 13, 2001 to Diann Cardello and Rosemary Frederick.

That an inventory was filed on November 13, 2001 and an Amended Inventory was filed on November 15, 2002, copies of which are hereto attached.

That the spouse did file an election to take against the will on January 15, 2002, which election was later withdrawn by Agreement dated December 5, 2002, which agreement was entered as an Order of this Court dated December 5, 2002.

That the testator did not marry after the execution of the will, and no children were born to the testator or lawfully adopted by him thereafter.

That notice of the granting of letters was advertised in the York Legal Record and in the York Dispatch/York Daily Record according to law.

That the estate is subject to Pennsylvania estate and inheritance tax, and the following amounts have been paid on account of the tax:

$144,352.69 being on account of estate tax
$251,928.66 being on account of inheritance tax

On December 2, 2002 an Appraisement was issued accepting the Estate's PA Inheritance Tax Return as filed.

That the present status of the Family Exemption is as follows:  Claimed by and paid to Diann Cardello.

That set forth in the following Schedule "A" is a full and true statement of all parties in interest, their relationship, and proportionate interests under the will.

If any beneficiary is deceased, the name, date of death, the name of the personal representative thereof, and the names of the persons entitled to participate in their stead, also are set forth.

If any share has been assigned or attached, full data is inference thereto is set forth.

## SCHEDULE "A"

| Names | Relationship | Interest |
|---|---|---|
| Judith A. Doviak | Friend | $25,000.00 Cash Bequest |
| Daniel W. Nardo | Son | 1996 Chevrolet Blazer and 1/8 share of Estate |
| Diann Cardello | Daughter | 1/8 share of Estate |
| Rosemary Frederick | Daughter | 1/8 share of Estate |
| Paul J. Nardo | Son | 1/8 share of Estate |
| June Aime Nardo-Harrison | Daughter | 1/8 share of Estate |
| Richard V. Nardo | Son | 1/8 share of Estate held in Trust |
| Frank A. Nardo, Jr. | Son | 1/8 share of Estate |
| James A. Nardo | Son | 1/8 share of Estate |
| Joyce E. Keesey | Spouse | Election against the Will (Withdrawn) |

The above-named parties are sui juris.

## SCHEDULE "B"

A true statement of debts due by distributes

| Names | Relationship | Amount | Remarks |
|---|---|---|---|
| | | | |

Attached Addendum "A" - related claims, other known debts of decedent believed to be paid.

That any unusual question requiring adjudication which counsel may deem helpful to the court are as follows:

Please see attached Addendum "A".

A statement of any material facts not already given is a follows:

Please see Attached Addendum "A".

That the Notice of the filing of the account has been given as required by Rules 6.3 and 5.5 of the Supreme Court O. Ct. Rules; a copy of the account has been filed as required by Rules 6.7 and 6.8 of said Rules; notice has been given as required by Section 3330 of the P.E.F. Code; and a certificate has been attached to the account in compliance with York County O. Ct. Rule 6.3.1.

That attached to the account are proofs of advertisement of the grant of letters and attached to this petition is a typewritten copy of the will and any codicils thereto, and of the inventory and appraisement.

Your Petitioners therefore respectfully pray that the Court confirm the actions of Petitioners as noted in this Second and Partial Account; declare the contested claims abandoned; and declare a right of first refusal provided for in Decedent's Will to be divested.

Stock and Leader

Frank A. Nardo, Jr., Esquire
Susquehanna Commerce Center, 6th E
221 West Philadelphia Street
York, PA 17404
(717) 846-9800
(Counsel for Petitioners)

Diann Cardello,                                    Petitioner

Rosemary Frederick,                                Petitioner

**York County:**

The above petitioners, being duly sworn, depose and say that the statements made in the foregoing Petition and Schedules hereto attached are true to the best of their knowledge and belief.

Sworn and Subscribed this 28

day of August            2003

(Title)
Notary
Annetta L. Fisher,
City Of York,
My Commission
Member, Pennsylvania

Diann Cardello            Petitioner

Rosemary Frederick        Petitioner

## ADDENDUM "A"

### Purpose of Account

Rosemary Frederick and Diann Cardello, Co-Executrices ("Co-Executrices") of the Estate of Frank A. Nardo, Sr. ("Estate"), by and through their attorneys, Stock and Leader, Attorneys at Law, file this Second and Intermediate Account to inform all interested in the Estate of their actions during their administration from the date of the First and Partial Account to the date of this Second and Intermediate Account. Co-Executrices seek Court confirmation of their actions, ask the Court to declare certain claims against the Estate to be abandoned, and to declare that a right of first refusal, provided for in Decedent's Will, to purchase certain real estate held by the Estate to be divested.

### Frank A. Nardo, Sr. Trust No. One

On August 27, 1999, the Decedent created an Intervivos Trust ("Trust"). The beneficiaries of the Trust are identical to the residuary beneficiaries of the Decedent's Will and the interests held by all are identical and equal. It is noted for the Court that a First and Intermediate Account for the Trust is to filed on the same date as the instant account and is, likewise, before the Court for audit

### Notice

1)    Notice of Audit has been given to the Settlor's surviving spouse, Joyce E. Keesey-Nardo, as required by Orphan's Court Rule 6.3. On or about January 15, 2002, Joyce E. Keesey-Nardo filed an election to take against the Will, Codicils, all conveyances and trusts of Frank A. Nardo, Sr., however, the said election was withdrawn by agreement dated December 3, 2002 which agreement was entered as an Order of this Court dated December 5, 2002. As part of said order, Joyce E. Keesey-Nardo is barred from asserting any claim or objection to this Account

however, she is being noticed, nevertheless.

2)    Notice of Audit has been given to the Pennsylvania Department of Revenue and the Internal Revenue Service. Because of the fully revocable nature of the Trust prior to Settlor's death, the Trust assets were taxable for Pennsylvania and Federal estate and inheritance tax purposes. Settlor's estate (the "Estate") paid federal and state estate and inheritance taxes for the Estate and for the assets comprising the Trust. A Notice and Appraisement issued by the Pennsylvania Department of Revenue and an Estate Closing Letter issued by the Internal Revenue Service, evidencing payment of all such taxes, have been filed at this Docket. Both the I.R.S. and the PA Department of Revenue are being noticed, nevertheless.

### Contested Claims

The Co-Executrices have been notified of or otherwise are aware of certain claims made against the Estate which the Co-Executrices contest. The claimants and the amount of the disputed claims are as follows:

| | Claimant | Amount Claimed |
|---|---|---|
| 1) | B & D Masonry, Inc. | $2,500.00 |
| 2) | B & M Contractor | $ 752.00 |
| 3) | Sanctuary Garden Center & Landscaping, Inc. | $2,580.00 |
| 4) | David T. Mountz, Esquire | $4,400.00 |

The Co-Executrices are proposing to pay nothing on these claims, and have mailed a Notice of the Filing of the Account to the said claimants notifying said claimants that the Co-Executrices propose to pay nothing on their respective contested claims. Claims Nos. 1, 2, and 3 were also similarly noticed at the time of filing the First and Partial Account for the Estate, and such claims were not objected to at or before Audit of the First Account. Co-Executrices ask the

Court to declare all the aforesaid claims abandoned.

### Payment of Inheritance and Estate Taxes

Although the Estate was responsible under the Will for the payment of all estate and inheritance taxes for property passing under the Will or otherwise, to the extent that the Estate was unable to pay all such taxes, the Trust, by its terms, was to pay the portion of the said taxes attributable to Trust assets for which the Estate lacked funds to pay. Due to a lack of liquid assets in the Estate, in order to timely pay the estate and inheritance taxes, the Trust loaned the Estate the sum of $2,432,400.00. The Estate and the Trust entered into a Note/Loan Agreement, secured by mortgages on real estate, memorializing the loan agreement. The Estate has paid funds back to the Trust, in large part from the net proceeds of the sale of two parcels of real estate held by the Estate, and the current balance carried on this Account for this loan, $ 1,644,783.03, is at the face principal amount, less repayments to date. The amount of the remaining principal of the loan which will be repaid depends on the selling price received for remaining tract of real estate held by the Estate and the undetermined amount of the remaining funds of the Estate, net of expenses, which will likewise be paid over to the Trust on account of this loan.

### Right of First Refusal to Purchase Real Estate

Pursuant to Article Fourth of Decedent's Will, Decedent provided for a right of first refusal to purchase real estate owned by Decedent at the time of his death. Further, Article Fourth provided for a procedure to determine rights of first refusal for any such real estate. On January 8, 2003, Albert G. Blakey, Esquire, on behalf of the Estate, conducted the disposition procedure as outlined in Article Fourth of Decedent's Will. By the conclusion of said proceedings, no right of first refusal remained. Attached hereto is an original Affidavit executed by Attorney Blakey describing the disposition procedure. Petitioners incorporate said Affidavit

herein by reference and note for the Court, and any interested parties, that the disposition scheme provided for in Article Fourth of Decedent's Will was faithfully executed and that no right of first refusal remains as to any real estate held by Decedent at the time of his death

As a further note, Petitioners draw the Court's attention to a parcel of real estate held by Decedent at the time of his death in Franklin County, Pennsylvania, which has been described in various filings with the Court at this docket, as the "McDonald's Property". The McDonald's Property, unlike the other three parcels of real estate noted in said Affidavit and this Account, was the subject of a Property Settlement Agreement entered into by Decedent with Joyce E. Keesey-Nardo, and was therefore not available to members of Decedent's family under Article Fourth of Decedent's Will. The McDonald's Property has since been conveyed to Keesey-Nardo.

Petitioners ask the Court to decree that the terms of Decedent's Will, as outlined at Article Fourth, were followed and that no right of first refusal remains as to any parcel of real estate held by Decedent at the time of his death, all such rights being divested.

### Specific Relief Sought in Decree

In addition to that deemed appropriate by the Court, Petitioners respectfully request that the Court:

1)    Confirm and approve the actions of the Co-Executrices as noted in the Second and Intermediate Account;

2)    ~~Declare the contested claims noted herein to be abandoned; and~~

3)    Declare the disposition procedure outlined in Article Fourth of Decedent's Will to be faithfully followed and, consequently, all rights of first refusal to purchase real estate owned by Decedent at death to be divested

IN THE COURT OF COMMON PLEAS, YORK COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

ESTATE OF FRANK A. NARDO, SR.    :    No. 67-01-01157
a/k/a FRANCIS ANTHONY NARDO    :
a/k/a FRANK A. NARDO,    :
late of Springettsbury Township,    :
            Deceased    :

## AFFIDAVIT

AND NOW, TO WIT, this 22 day of August, 2003, personally appears before me

Albert G. Blakey, known to me, who upon oath deposes and says:

1.     I am an attorney who has been practicing law in York County, Pennsylvania for

more than forty (40) years.

2.     I was retained by the Executors of the Estate of Frank A. Nardo, Sr. to see that the

provisions of Decedent's Will with respect to the disposition of real estate were faithfully

followed, these provisions being set forth in Item Fourth of the Will dated October 13, 2000.

3.     It was determined that there were three parcels of real estate subject to the

provisions of said Will, valued by the appraisal of Daniel Wagner, MAI, which value was used

by the Estate for federal and state inheritance tax purposes, and accepted by both governmental

entities as follows:

          a.     ~~A 46-acre tract on the Marietta Pike - $525,000.00;~~

          b.     The Lombard Road property - $825,000.00; and

          c.     A residential lot in the Chapel Hill Development - $23,000.00.

4.     Frank A. Nardo, Jr., James A. Nardo, Daniel W. Nardo, June A. Nardo-Harrison,

Richard V. Nardo and Fiore L. Nardo were all given notice by the Executrices of the Estate, said

six and the two Executrices being all of the children of Decedent, that a meeting would be held in my office on January 8, 2003 at 9:30 a.m., at which time these three parcels would be offered for sale on the terms stated in the Will.

5.      I then sent a letter dated January 3, 2003 to the six parties identified above, with copies to Dianne Cardello and Rosemary Frederick, the Executrices of the Estate, to confirm the parcels that would be offered for sale, the prices established for the same, and to describe the procedure that would be followed.  A copy of that letter is attached hereto as **Exhibit "A"**.

6.      All of the children of Decedent attended the meeting on January 8, 2003, except Richard, who executed a document stating that he was not interested in participating.  At the beginning of this meeting, the procedures outlined in the Will were again reviewed.

7.      I then passed an envelope to Frank A. Nardo, Jr., James A. Nardo and Daniel W. Nardo, which concealed three numbered slips and asked each to draw one of these slips to establish the order in which each would be allowed to exercise their rights of first refusal with respect to the three different parcels.

8.      I then circulated a second envelope to Frank A. Nardo, Jr., James A. Nardo and Daniel W. Nardo, which concealed three other slips, each identifying one of the parcels being offered for sale and had these drawn to establish the sequence in which the properties would be offered.

9.      We then went through the procedure stated in the Will, during the course of which James A. Nardo agreed to buy the Marietta property, Daniel W. Nardo agreed to buy the residential lot, and none of the three agreed to purchase the Lumbard Road property.

10.     I then offered all of the other children the opportunity to purchase the Lombard Road property and none were interested.

11.     I then declared that the rights of first refusal were discharged and stated that the Executrices were free to sell the real estate as they deemed best.

12.     Subsequently, Daniel W. Nardo expressed his interest in purchasing the Lombard Road property and a sales agreement was negotiated and executed, which gave him the right to withdraw within a given period of time. He later exercised his right to withdraw, so that the parcel was back on the market, free from any restrictions imposed by Decedent's Will.

13.     In conclusion, the terms of Decedent's Will were followed. The rights of first refusal were offered and either accepted or declined as stated above. No right of first refusal remains.

WITNESS:

_____          _____
                                          Albert G. Blakey, Esquire

Sworn and subscribed to
before me this 22 day
of August, 2003.

_____
        Notary Public

NOTARIAL SEAL
ILEEN S KRONE, Notary Public
City of York, York County
My Commission Expires March 28, 2005

Albert G. Blakey
David Wm. Bupp
Donald B. Hoyt
Charles A. Rausch
Sara A. Austin
Stacey R. MacNeal
Penny A. Ayers
John J. Baranski, Jr.



Blakey, Yost, Bupp & Rausch, LLP

of counsel
———
Robert O. Beers
Donald H. Yost

January 3, 2003

Ms. June A. Nardo-Harrison
5232 Freter Road
Sykesville, MD 21784

Mr. Daniel W. Nardo
2908 Cape Horn Road
Red Lion, PA 17356

Mr. Richard V. Nardo
689 Hemenway
Marlboro, MA 01752

Mr. James A. Nardo
929 Carter Cove
Hummelstown, PA 17036

Mr. Fiore L. Nardo
1323 Quarry Lane
Lancaster, PA 17603

Frank A. Nardo, Jr., Esquire
STOCK AND LEADER
6th Floor
221 West Philadelphia Street
York, PA 17404

Re:    Estate of Frank A. Nardo, Sr. – Real Estate Disposition

Dear Ms. Nardo-Harrison and Gentlemen:

I write to follow up on the letter to all of you from Frank, Jr., dated December 18, 2002 regarding the proceeding to deal with your father's real estate in accordance with the terms of his will.

Prices for the three parcels, based upon the figures used in the federal estate tax return and the Pennsylvania inheritance tax return, which are, in turn, based upon the appraisal of Daniel Wagner, M.A.I, are:

    The 46-acre tract on the Marietta Pike - $525,000;
    The Lombard Road property - $825,000; and
    The residential building lot in Chapel Hill Development - $23,000.

With a copy of this letter to each of you, I enclose copies of the proposed Deeds.


EXHIBIT

Frank A. Nardo Estate Heirs
January 3, 2003
Page 2


At the meeting schedule for January 8, 2003 at 9:30 a.m. in this office, we will determine, by lot, the order in which James, Daniel and Frank will have the opportunity to bid, and we will determine, by lot, the order in which the three parcels will be available for bid.

A successful bidder will be expected to execute an Agreement of Sale for the purchased tract in the form enclosed.

If anyone wants to stand aside from the process, they may do so by not coming to the meeting on January 8th, or by executing a waiver form that is also enclosed.

It is my intent to follow your father's directives as set forth in his will.

I look forward to seeing you on January 8th.

Very truly yours,

Albert G. Blakey

AGB/tsg

cc:   Ms. Diann Cardello
      Ms. Rosemary Frederick

# Second Codicil

I, Frank A. Nardo, Sr., of York County, Pennsylvania, do hereby make this as a Second Codicil to my Will dated October 13, 2000, as amended by my First Codicil to my said Will, which First Codicil is dated October 14, 2000.

I.    I hereby amend Article "First" of my Will dated October 13, 2000 by adding the following:



"Whether my divorce from Joyce E. Keesey has been finalized or not at the time of my death, I hereby grant the authority and power to make all decisions necessary or desirable for my funeral and burial arrangements to my children and not Joyce E. Keesey. Any such decisions which must be made shall be made by majority vote of all of my children. I further direct that upon my death:

A.    There shall be a viewing.
B.    I shall not be cremated after the services.
C.    My funeral shall be simple and inexpensive and my funeral shall be managed by the Keffer Funeral Home in York, PA.
D.    I shall be buried with my wife June, where she is presently buried.
E.    I shall be afforded all honors due a military veteran, including but not necessarily limited to a flag draped coffin and a monument at my grave reflecting my service in the Second World War.

It is my desire that this be deemed to be an explicit, sincere and unequivocal expression of my intent that my children and not Joyce E. Keesey make any necessary decisions regarding the disposition of my remains, further, I make the foregoing directives I make knowingly, intelligently and with sound mind."

In all other respects, I hereby ratify and confirm the rest of Article "First" as it is written.

II.    In all other respects, I hereby ratify, confirm and republish my Will dated October 13, 2000 and my First Codicil to my said will, which First Codicil is dated October 14, 2000.

IN WITNESS WHEREOF, I have hereunto set my hand and seal to this my Second Codicil to my Will dated October 13, 2000, this 27th day of October, 2000.

_____(SEAL)
Frank A. Nardo, Sr.

SIGNED by Frank A. Nardo, Sr. as a Second Codicil to his Will dated October 13, 2000, in our presence, who at his request, in his presence and in the presence of each other have signed as witnesses:

_____                    C/o York Hospital
_____        Address 1001 S. George St. York PA 17403

_____                    C/o York Ho.
_____        _____ 1001 S. George _____

## ACKNOWLEDGMENT

Commonwealth of Pennsylvania    :
                                :    SS
County of York                  :

I, Frank A. Nardo, Sr., testator, whose name is signed to the attached or foregoing instrument, having been duly qualified according to law, do hereby acknowledge that I signed and executed the instrument as a Second Codicil to my last Will and Testament dated October 13, 2000, as amended by my First Codicil, which First Codicil is dated October 14, 2000; that I signed it willingly; and that I signed it as my free and voluntary act for the purposes therein expressed.

                                        Frank A. Nardo, Sr.

Sworn or affirmed to and acknowledged before me by Frank A. Nardo, Sr., the testator, this _28_ day of October, 2000.

                                        Notary Public

NOTARIAL SEAL
L. ROBERT KUHN, NOTARY PUBLIC
SPRING GARDEN TWP., YORK CO., PA
MY COMMISSION EXPIRES JAN. 28, 2001

## AFFIDAVIT

Commonwealth of Pennsylvania    :
                                :    SS
County of York                  :

We, the undersigned, the witnesses whose names are signed to the attached or foregoing instrument, being duly qualified according to law, do depose and say that we were present and saw testator sign and execute the instrument as a Second Codicil to his last Will and Testament which the Testator expressed is dated October 13, 2000 and amended by a First Codicil dated October 14, 2000; that he signed willingly and that he executed it as his free and voluntary act for the purposes therein expressed; that each of us in the hearing and sight of the testator signed said Codicil as witnesses; and that to the best of our knowledge the testator was at that time 18 or more years of age, of sound mind and under no constraint or undue influence.

Tiffanie Rager                          Chesica A. Karpinski
Tiffanie Rager                          Chesica A. Karpinski

Sworn or affirmed to and subscribed to before me, by
_Tiffanie Rager_ and _Chesica A. Karpinski_, witnesses, this
_28_ day of October, 2000

                                        Notary Public

# First Codicil

I, Frank A. Nardo, Sr., of York County, Pennsylvania, do hereby make this as a First Codicil to my Will dated October 13, 2000.



I.      I hereby <u>amend</u> Article "Second" of my Will dated October 13, **2000 by adding** the following:

"I give and bequeath the sum of Twenty-Five Thousand Dollars ($25,000) unto my loyal friend Judith A. Doviak, presently of 2093 Hollywood Drive, York, PA."

In all other respects, I hereby ratify and confirm the rest of Article "Second" as it is written.

II.     I hereby <u>revoke</u> Article "Seventh" of my Will dated October 13, **2000 and replace** it with the following:

## "Seventh

Except as otherwise specifically provided for in this Article "Seventh" and elsewhere in my Will, I direct that any and all inheritance, estate and other death taxes imposed upon my estate passing under my Will or otherwise, including but not limited to the said taxes owed due to property transferred outside of my Will pursuant to the "Frank A. Nardo, Sr. Trust Number One", shall be paid out of the principal of my residuary estate. I limit this directive in that I intend that any Generation Skipping Tax Liability incurred by my Estate shall be paid by the Skip Persons taking under my Will, by trust, or otherwise, and said Generation Skipping Tax amount shall be deducted pro rata from each Skip Person's distribution whether passing by my Will, trust, or otherwise. I further limit the directive to pay all inheritance, estate and other death taxes, as necessary to be consistent with Article "Fourth" of my Will, in that, any child purchasing real estate owned by me at the time of my death shall pay any <u>additional</u> inheritance, estate and other death taxes imposed upon my Estate due to an undervaluation of the said real property as determined by any taxing authority, for inheritance, estate and other death tax purposes."

III.    In all other respects, I hereby ratify, confirm and republish my Will dated October 13, 2000.

IN WITNESS WHEREOF, I have hereunto set my hand and seal to this my First Codicil to my Will dated October 13, 2000, this 14th day of October, 2000.

_____ (SEAL)
Frank A. Nardo, Sr.

SIGNED by Frank A. Nardo, Sr. as a First Codicil to his Will dated October 13, 2000, in our presence, who at his request, in his presence and in the presence of each other have signed as witnesses:

_____     Address _____
Miss Lauer.                                    _____

_____     Address _____

## ACKNOWLEDGMENT

Commonwealth of Pennsylvania :
                                  :        SS
County of **York**                :

I, **Frank A**. Nardo, Sr., testator, **whose name is** signed to the attached or foregoing **instrument**, having been duly **qualified according** to law, do hereby acknowledge **that** I signed and executed **the instrument** as a First Codicil to my last Will and **Testament** dated October 13, 2000; **that I signed** it willingly; and that I signed it **as my free** and voluntary act for **the purposes** therein expressed.

<div style="text-align: right">

_Frank A. Nardo, Sr._
Frank A. Nardo, Sr.

</div>

**Sworn** or affirmed to and acknowledged **before** me by Frank A. Nardo, Sr., **the testator**, this __14__ day of October, 2000.

<div style="text-align: right">

_Crystal Hotham_
Notary Public

</div>

> Notarial Seal
> Crystal Hotham, Notary Public
> Springettsbury Twp., York County
> My Commission Expires Feb. 4, 2002
> Member, Pennsylvania Association of Notaries

## AFFIDAVIT

Commonwealth of Pennsylvania :
                                  :        SS
County of York                    :

We, the undersigned, the witnesses whose names are signed to the attached or foregoing instrument, being duly qualified according to law, do depose and say that we were present and saw testator sign and execute the instrument as a First Codicil to his last Will and Testament dated October 13, 2000; that he signed willingly and that he executed it as his free and voluntary act for the purposes therein expressed; that each of us in the hearing and sight of the testator signed said Codicil as witnesses; and that to the best of our knowledge the testator was at that time 18 or more years of age, of sound mind and under no constraint or undue influence.

_Jessica M Laucks_                    _Teresa Jackson_
JESS LAUCKS                           TERESA JACKSON

Sworn or affirmed to and subscribed to before me, by
_JESS LAUCKS_ and _TERESA JACKSON_ , witnesses, this
_14_ day of October, 2000.

<div style="text-align: right">

_Crystal Hotham_
Notary Public

</div>

> Notarial Seal
> Crystal Hotham, Notary Public
> Springettsbury Twp., York County
> My Commission Expires Feb. 4, 2002

# Last Will and Testament
# of Frank A. Nardo, Sr.

I, Frank A. Nardo, Sr., of York County, Pennsylvania, being of sound and disposing mind, memory, and understanding, do hereby declare this as and for my last will and testament hereby revoking all wills and codicils previously made by me.

I begin by noting for the sake of my family that I have asked my son, Frank, to draft this my last will and testament, as I view this act to be a profoundly personal one and I am most comfortable with my son performing this service for me rather than anyone else. I assure all of you that what is contained in this my last will and testament are my desires which Frank has put into words. If any of my sons or daughters have difficulty with what Frank has done for me, your argument is with me, not your brother.

## First

I direct the payment of my debts and expenses of my last illness and funeral from my estate as soon after my death as conveniently may be done. If there be no cemetery lot available for my interment, owned by me at the time of my death, I authorize my personal representatives to purchase such cemetery lot with a contract for perpetual care, using therefor funds from my estate, in such amount as my personal representatives shall consider necessary and desirable, and I authorize my personal representatives to cause title to or ownership of such lot so purchased to be vested in such person as my personal representatives shall designate. Further, I authorize my personal representatives to expend funds from my estate, in such amount as my personal representatives shall consider necessary and desirable, for the purchase, erection, and inscription of a suitable marker for my grave.

## Second

I give and bequeath my 1996 Chevrolet Blazer unto my son, Daniel W. Nardo.

Not unmindful of Joyce E. Keesey, I hereby again ratify in all respects my execution of my October 10, 2000 agreement, with her, and I believe I have provided fully and amply for Joyce at the time of the execution of the said agreement

## Third

I direct that all the rest, residue and remainder of my tangible personal property owned by me at the time of my death, together with all insurance policies thereon, shall be sold and the proceeds shall be included in my residuary estate



and to be distributed pursuant to the terms contained in Article "Fourth", below.

## Fourth

I give, devise and bequeath all the rest, residue and remainder of my estate unto all my children who survive me at the time of my death per capita and not per stirpes. All of my then-surviving children shall take equal shares, share and share alike and outright except for any share which may be due my son, Richard Nardo, which said share shall be subject to the provisions which follow in Article "Fifth".

Out of fairness to all, I have not specifically devised any real property which I now own, but I would like my remaining real property to be offered to those of my children who are most likely able to continue the work that I have begun. I hereby direct that my personal representatives provide the following children of mine: Frank A., Jr., James A., Daniel W., the right of first refusal to purchase the property I own at the time of my death for a proposed purchase price which shall be equal to the value established, used, and approved by the taxing authority, for federal and state inheritance tax purposes, with the right of first refusal for each parcel being granted to my afore named children upon the following procedure: The order that each parcel shall be offered shall be determined by assigning a number to each parcel and the order established randomly by casting lots. Each parcel shall then be offered at the said purchase price, in the said order of parcels, to my afore named children in the following order: For the first parcel offered, each of my afore named children shall be assigned a number, and the order of right of first refusal being determined randomly by casting lots, with the successive parcels being offered in the randomly determined order until all parcels are either agreed to be purchased or rejected. If a named child agrees to purchase or rejects the parcel, that child shall go to the then last place on the list for purposes of the offer of the next parcel. The next parcel shall be offered to the child who is then first on the randomly determined ordered list. For purposes of this provision, any real property I own consisting of more than one contiguous parcels, specifically but not necessarily limited to the real property of contiguous parcels I own in York Township, the contiguous parcels shall constitute one parcel and offered for sale to my afore named children as if one parcel. My personal representatives shall offer for sale the real estate I own at the time of my death in the foregoing manner, as soon as practicable after my death. If my afore named children fail to exercise their right of first refusal to purchase any parcel or parcels of real property owned by me at the time of my death, I hereby direct that the said property be then offered in the same manner to any of my remaining children who may be interested in so purchasing the said real property. If any such real property remains unsold, I direct that the same be offered for sale to the public at the highest price which may be expected for each parcel and without regard to the contiguous nature of multiple parcels. Any child exercising his right of first refusal and desiring to purchase any such real property shall be required to purchase the real property at the said purchase price; further, any amounts otherwise due the said child under this my Last Will and Testament shall be held as a refundable deposit against said purchase price, and the balance of the said purchase price shall be arranged by the purchasing child within six (6) months of the date of my death. Conveyance of any of the parcels of property shall not occur until such time as the federal and state inheritance tax returns have been approved, unless the purchasing child(ren) enter into an agreement with and provide a mortgage on the said property to my Estate guaranteeing reimbursement to the Estate any amounts due in inheritance and estate taxes as a result of an undervaluation of the parcel for such tax purposes if the real property to the purchasing child(ren) prior to purchasing. Should any

death, to the satisfaction of my personal representatives, for full payment of the balance of the said purchase price, the property shall be offered for sale again to (i) the remaining afore named children, then (ii) my remaining children, then (iii) the general public. Any deposit monies on account of a child attempting to purchase but who is unable to close a sale of such property shall be distributed to the said child, as if the said child had not attempted to make the purchase. To reiterate, the purchasing children shall be responsible for the payment of any unpaid inheritance, estate or other similar death taxes due to the undervaluation, for such tax purposes, of the property which the respective children are purchasing.

## Fifth

Understanding the danger inherent in placing property in the hands of one in the grips of an addiction, if my son Richard survives me in death, any share of my estate to which Richard is entitled I hereby give, devise and bequeath to First Union, N.A., or its successor in interest, (alternately herein, "Corporate Trustee") IN TRUST HOWEVER, and to act as Co-Trustee with my children, Fiore L.; Frank A., Jr.; James A.; and Daniel W.; (alternately and jointly herein, "Individual Trustees") upon the following terms and conditions:

A.    This Trust shall continue only during the natural life of Richard and it shall be known as "The Richard Nardo Contingent Trust". My Corporate Trustee, First Union Bank, N.A., shall hold the trust principal and any income for Richard's benefit and until whichever of the following events first occurs:

i.    At such time as Richard establishes to the satisfaction of a majority of my Trustees that Richard has remained illicit drug and alcohol-free for a period of five (5) consecutive and uninterrupted years, whenever the same may occur and without regard to however many years it takes Richard to maintain his sobriety for the five consecutive years.

Upon the aforementioned satisfaction of a majority of my Trustees of Richard's drug and alcohol-free status for a consecutive five year period, my Corporate Trustee shall distribute on-half (½) of the total corpus and accumulated income of the Trust to Richard. The remaining balance of the Trust and the income accumulating thereto shall remain in trust for one additional five (5) year period during which a majority of my Trustees shall again determine that Richard remains drug and alcohol-free for the entire subsequent five (5) year period. If Richard is able to maintain his sobriety for the subsequent five (5) year period, my Corporate Trustee shall distribute the entire balance of the Trust to Richard with my hopes that he has, by then, established the character necessary to live the balance of his life sober.

The aforementioned determinations of a majority of my Trustees shall be in the said Trustees' exclusive and absolute discretion, subject to whatever tests or other proof that the said Trustees deem appropriate and shall not be subject to review or otherwise expose my Trustees, or any of them, to any liability to Richard, my other children, or anyone else for my Trustees' good faith exercise of discretion in making the aforesaid determination of his

Finally, I note that I understand that whatever proof is demanded may not be infallible, but is undertaken with my concern for and with Richard's best interests at heart.                                OR

2.  If Richard predeceases the occurrence of the condition in subparagraph "1." in that he fails to establish an initial five year period of sobriety prior to his death, the balance of the Trust principal and accumulated income shall pass to my then surviving children, per capita;                                OR

    if Richard establishes his initial five year period of sobriety but, in the determination of a majority of my Trustees fails in his sobriety in the subsequent five year period, the then accumulated balance of the Trust shall likewise pass to my then-surviving children, per capita;                                OR

    if Richard establishes his sobriety for the first five years but predeceases his completion of the subsequent five year period and he dies sober, the accumulated balance of the trust shall pass to Richard's estate.

B.  Further, if, in the determination of a majority of my Individual Trustees, Richard is sober and is making progress to the goals outlined above, a majority of my Individual Trustees may direct my Corporate Trustee to make distributions of principal or income in order to provide for Richard's reasonable living expenses. Such a determination shall be in the sole and absolute discretion of a majority of my Individual Trustees. It is my intention that in exercising discretion with regard to any distribution hereunder of principal or income, my Individual Trustees shall consider funds available to Richard from all sources. These expenses may include: shelter, provided however, that, if real estate is purchased, the title to said real estate shall remain vested in my Corporate Trustee until such time as all other conditions of this Trust are fulfilled; lease payments for shelter; food; medical care; counseling; drug rehabilitation expenses, provided all other conditions herein are met; and education expenses. To the extent practicable, my Corporate Trustee is directed to make such distributions hereunder directly to the provider of such property or service and not to Richard.

C.  Richard's brothers and sisters should encourage Richard in his endeavor to remain sober. If Richard fails in his pursuit of sobriety and his failure has been aided by a brother or sister, that brother or sister shall forfeit any right, title or interest that he/she may otherwise have as a contingent remainderman in this Trust.

D.  I hereby grant my Corporate Trustee the power, without court approval, to terminate this Trust if the principal and any accumulated or undistributed income is of an amount which my Corporate Trustee deems to be too small to practically remain in trust. In this event, my Corporate Trustee is authorized to make immediate distribution to my personal representatives who are authorized to further distribute the property to Richard, or use it for Richard's benefit, as my personal representatives deem appropriate and consistent with the intent of the Grantor set forth in this Article "Third".

E.  Any corporate fiduciary serving hereunder shall receive compensation for its services hereunder in accordance with a fee agreement entered into between it and me during my lifetime, or if there is no such agreement, the corporate fiduciary shall receive compensation in accordance with its Schedule of Fees in effect from time to time during the period in which its services are performed.

F.  All shares of principal and income held in trust shall be held and disbursed free from anticipation, assignment, pledge, or obligation of the beneficiaries and any of them, and shall not be subject to any execution, attachment, levy or sequestration or other claims of the creditors of the said beneficiaries or any of them.

G.  In addition to the powers enumerated in Article "Eighth" in my Will dated April 22, 1999, I hereby grant my Corporate Trustee the power to invest and reinvest in all forms of property without being confined to legal investments and without regard for the principal of diversification. It is my intention that my Corporate Trustee will make such investment decisions giving due consideration to the input of a majority of my Individual Trustees.

H.  Except for instances of willful misconduct, recklessness, or gross negligence, I expressly relieve my Trustees, Corporate or Individual as appropriate to their respective positions, of any liability or responsibility whatsoever for any act or failure to act by, or for following the advice of such accountants, agents, attorneys, investment counsel, brokers, bank or trust company, so long as my Trustees exercise due care in their selection.

I.  Upon the written request of a majority of my Individual Trustees of any trust hereunder then serving, delivered to the Corporate Trustee then serving, the Corporate Trustee of such trust shall promptly resign; provided that the Individual Trustees, must appoint a corporation as successor trustee that is (i) organized under the laws of the United States or any State thereof, (ii) possessed of trust powers, and (iii) has trust assets of at least One Hundred Million Dollars ($100,000,000). Any power of appointment and removal under this Paragraph shall not be extinguished by a single exercise; provided that the power to remove a corporate trustee shall not be exercised more frequently than once every two years.

J.  Any Trustee while serving hereunder may resign without court approval by written notice delivered to the co-Trustees and to Richard. In the case of my Corporate Trustee, such notice shall be provided thirty (30) days in advance of the effective date of the resignation. Should a corporate trustee serving hereunder provide the Individual Trustees notice of resignation, a majority of my Individual Trustees shall appoint a successor corporate trustee which meets the requirements outlined in Paragraph "I", above. The corporate trustee's resignation shall be complete upon transfer of all remaining trust assets to the newly appointed corporate trustee

K.  No Trustee taking office shall be liable in any way for the acts or

omissions of any Trustee prior to such Trustee's assumption of office and shall have no duty to review the performance of a Trustee prior to that time.

L.    Each Individual Trustee of any trust hereunder then serving may appoint in writing an individual to serve in his or her place; provided that any such appointment shall be that of one of my children, excluding Richard.

M.    Any inconsistencies which arise in the interpretation of this trust document or which arise in its implementation shall be resolved in favor of my intent to encourage Richard's sobriety and consistent with the other terms and provisions contained herein. Should any provision of this Trust be deemed to be contrary to law or policy, the same shall be stricken or otherwise conformed to such law or policy.

N.    I reiterate that the foregoing trust provisions apply to and control <u>only</u> the share which may be due my son Richard Nardo, all other shares of my residuary estate shall pass outright and without restriction.

I note here to Richard that my first inclination was to provide you with nothing, for fear that doing so would only serve to prolong your addiction and waste more of what you have already wasted and which I have worked so hard to obtain. Your brother, Frank, has helped me construct a plan which, hopefully, will provide an incentive to you to clean yourself up.

## Sixth

All shares of principal and income hereby given shall be free from anticipation, assignment, pledge, or obligation of the beneficiaries and any of them, and shall not be subject to any execution, attachment, levy or sequestration or other claims of the creditors of the said beneficiaries or any of them.

## Seventh

I direct that any and all Inheritance, Estate and Transfer Taxes imposed upon my estate passing under my will or otherwise, including but not limited to those said taxes accruing due to property transferred pursuant to the "Frank A. Nardo, Sr. Trust Number One", shall be paid out of the principal of my residuary estate. I limit the foregoing only in that I intend that any Generation Skipping Tax Liability incurred by my estate shall be paid by the Skip Persons taking hereunder, by trust, or otherwise, and said Generation Skipping Tax amount shall be deducted pro rata from each Skip Person's distribution whether passing by will, trust, or otherwise.

## Eighth

My personal representatives, trustee, and their successors, shall have the following powers, in addition to those vested in them by law, or as set forth or limited elsewhere in this document, as appropriate to their respective positions and as otherwise set forth, limited or modified in this my last will and testament, applicable to all property, whether principal or income, including property held for minors, exercisable without court approval, and effective until actual distribution of all property.

A. to retain in the form received, and to sell either at public sale or private sale any real or personal property;

B. to manage, mortgage, lease, option, divide, alter, repair, and improve real property and generally to exercise all rights of real estate ownership;

C. to invest and reinvest in all forms of property, but I do intend that any investments made by my personal representatives on behalf of my estate be those confined to legal investments;

D. to exercise any option or rights arising from ownership of investments;

E. to compromise claims without court approval and without consent of any beneficiary;

F. to borrow money and to pledge any real or personal property as security for the repayment thereof;

G. to continue the operation of my real estate development business to the extent that it may be necessary, and I hereby grant my personal representatives all the powers necessary for the conduct of the said business until the same may be liquidated or otherwise disposed of in accordance with my wishes contained herein, which said powers shall include, but not specifically be limited to, the aforesaid powers contained herein this Article "Eighth";

H. to employ accountants, agents, attorneys, investment counsel, brokers, bank or trust company and to pay a reasonable fee for their services. I direct, however, that it is my intent that my personal representatives retain the services of Judy Doviak with the accounting firm of Kuhn and Doviak, York, PA, to perform any and all accounting functions relative to my estate, including as may be necessary for the conduct of the operation of my business; Judy has been very helpful, fair and honest throughout my years in business. It is also my intent that my personal representatives retain the services of Ed Roberts, Esquire, of York, PA, as the attorney for my estate and to perform any legal functions as may be necessary to the conduct of my business, provided, however, that he enter into a reasonable fee agreement with my personal representatives, of which my personal representatives shall look to my son, Frank, for direction in this specific regard. I trust that Ed will handle my estate fairly, honestly, competently, and with the best interest of all my children at heart.

I. To distribute in cash, in kind, or partly in each, and to cause any share to be composed of cash, property, or undivided fractional shares in property different in kind from any other share.

## Ninth

To the extent I am able by law, I direct that no trustee, personal representative, guardian, or other fiduciary named, nominated, or appointed in this, my last will and testament, shall be required to post any bond or give any security of any type for any purpose whatsoever and in any jurisdiction.

## Tenth

If any beneficiary or remainderman under this Will in any manner, directly or indirectly, contests or attacks this Will or any of its provisions, or objects to the accounts or actions of my fiduciaries, without probable cause, such beneficiary shall pay all costs, including but not limited to attorneys' fees, arising in connection

with such contest, attack or objection incurred by my estate, such trust or such fiduciary personally. In the event that such beneficiary does not prevail in such action, any share or interest in my estate or such trust which would otherwise pass to such beneficiary or remainderman under this Will shall be revoked and the property consisting of such share shall be disposed of in the manner provided herein as if that contesting beneficiary or remainderman had predeceased me. I add here that I understand completely the import of this paragraph and I intend that it be implemented fully and to the extent allowable by law. I have done my best for my family, and I feel that I owe no one anything and certainly no one any more or less that I have herein provided. Further, I can think of no less-deserving persons to share in what I have worked so hard for than the attorneys who would profit needlessly from such a will contest.

## Eleventh

Finally, I nominate, constitute, and appoint my daughters, Rosemary Frederick and Diann Cardello, as Co-Executrixes of this my last will and testament. It is my intent that Rose and Diann act jointly and with my interest and the interest of all my sons and daughters at heart. I further intend that Rose and Diann have the support and input of their brothers in fulfilling their duties as co-Executrixes, and I am confident that they will be able to work together and in concert. In the event of either daughter's death, resignation, renunciation, or inability to act for any reason whatsoever as my co-executrix, I intend that the surviving or otherwise able and willing daughter to act alone as my Executrix. As I intend their responsibilities to be carried out with the aid of my sons, and the attorney and accountant for the estate, I hereby direct that Rose and Diann each receive the sum of $10,000.00 as their compensation as my personal representatives.

In Witness Whereof, I have hereunto set my hand and seal to this my

Last Will and Testament, consisting of eight (8) typewritten pages, including this

page, but not including the page following which bears the acknowledgment and

affidavit; the first seven (7) pages of which bear my signature and this date in the

left margin for the purpose of identification, this 13th day of October, 2000.


_____
Frank A. Nardo, Sr.

Signed, sealed, published, and declared by the above named testator, as and

for his last will and testament in the presence of us, who, at his request, in his sight

and presence, and in the sight and presence of each other, have hereunto subscribed

our names as witnesses

_____ residing at 2093 Hollywood Dr. York Pa 17403
Judith A Dovian

_____ residing at 30__ ___ ___ ___ __ ___

Page 8 of 8

## ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA, COUNTY OF YORK

I, Frank A. Nardo, Sr., the testator whose name is signed to the attached or foregoing instrument, having been duly qualified according to law, do hereby acknowledge that I signed and executed the instrument as my Last Will; and that I signed it willingly and as my free and voluntary act for the purposes therein expressed.

Sworn to or affirmed and subscribed and acknowledged before me by Frank A. Nardo, Sr., the testator, this 13th day of October, 2000.

_____
Frank A. Nardo, Sr.

_____
Notary Public

[NOTARY SEAL]

## AFFIDAVIT

COMMONWEALTH OF PENNSYLVANIA, COUNTY OF YORK
JUDITH A. DOVIAK

We, (or I) _____, and

VICKIE L. EISENHART, the witness(es) whose name(s) are signed to the attached or foregoing instrument, being duly qualified according to law, do depose and say that we were (I was) present and saw the testator sign and execute the instrument as his Last Will; that the testator signed willingly and executed it as his free and voluntary act for the purposes therein expressed; that each subscribing witness in the hearing and sight of the testator signed the will as a witness; and that to the best of our (my) knowledge the testator was at that time 18 or more years of age, of sound mind and under no constraint or undue influence.

Sworn to or affirmed and subscribed to before me by

JUDITH A. DOVIAK and VICKIE L. EISENHART, witness(es), this

13th day of October, 2000.

_____
Witness

_____
Witness

_____
Notary Public

**COPY**

See Instructions on Cover Page

# INVENTORY

ESTATE OF  Frank A. Nardo, Sr.
a/k/a Francis Anthony Nardo a/k/a
Frank A. Nardo                                    } NO. _67-01-01157_____, 20____

Late of _Springettsbury Township_____
                                    Deceased.

### AFFIDAVIT OF PERSONAL REPRESENTATIVES

Commonwealth of Pennsylvania, } ss.
County of York,

Personally appeared before me, a __Notary Public_____ in and for said County,
_Diann Cardello and Rosemary Frederick, Co-Executors_____
who being duly _sworn_____ according to law, say _____ that the within Inventory of the personal property
and real estate which were of _Frank A. Nardo, Sr. a/k/a Francis Anthony Nardo a/k/a Frank A._, late of
                                                                                              Nardo
_Springettsbry Township_____ Deceased, is true and correct to the best of _their_____
knowledge, information and belief.

_Sworn_____ and subscribed to before me
this _12th___ day of _November_ A.D., 20 01                 _Diann Cardello, Ex._
_Karen B. Bodnar_____                          Diann Cardello, Co-Executor

| Notarial Seal |
| Karen B. Bodnar, Notary Public |
| York, York County |
| My Commission Expires Aug. 30, 2004 |

Member, Pennsylvania Association of Notaries

_Rosemary Frederick, Ex._
Rosemary Frederick, Co-Executor

# INVENTORY

f the personal property and real estate situate in the Commonwealth, which were of _Frank A. Nardo, Sr. a/k/a Francis
_Anthony Nardo a/k/a Frank A. Nardo_ late of _Springettsbury Township_____ in the County of York,

ken and made in conformity with the above deposition under Section 3301 and following of the P.E.F. Code.

| PERSONAL PROPERTY | DOLLARS | CENTS |
|---|---|---|
| See attached | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Estate Inventory
Valued as of Date of Death

| No. of Shares | Stocks | | |
|---|---|---|---|
| 2,345 | Allstate Corporation held in certificate shares | $ | 77,865.72 |
| 2,755.6590 | Allstate Corporation held in dividend reinvestment account | | 91,501.66 |
| 140 | Metlife, Inc. | | 4,100.60 |
| 285.2320 | Sears Roebuck & Co. held in dividend reinvestment account | | 12,942.40 |
| 2,568 | Sears Roebuck & Co. held in certificate shares | | 116,523.00 |
| | Total Stocks | $ | 302,933.38 |

Cash

| | | | |
|---|---|---|---|
| Binkley & Ober, Inc., refund of credit balance | $ | 240.58 |
| Blue Cross, claim payment | | 212.11 |
| Capital BlueCross/ Pennsylvania BlueShield, refund of insurance premium | | 158.45 |
| Cash found in wallet | | 150.00 |
| Commonwealth of Pennsylvania, refund on 2000 Personal income tax filed 10/12/01 | | 1,316.00 |
| State Auto Insurance Co., refund of insurance premium | | 172.00 |
| Total Cash | $ | 2,249.14 |

Checking/Savings Accounts

| | | | |
|---|---|---|---|
| Commerce Bank Checking Account #0512068925 | $ | 1,593.07 |
| First Union Checking Account #1000294036274 | | 100.29 |

Estate Inventory (Continued)

Checking/Savings Accounts

| | | |
|---|---|---|
| First Union Savings Account #3000454310026 | $ | 1,001.32 |
| Interest to date of death | | 0.02 |
| Total Checking/Savings Accounts | $ | 2,694.70 |

Money Market/CMA Accounts

| | | |
|---|---|---|
| Commerce Bank Certificate of Deposit #901189 | $ | 206,111.12 |
| Interest to date of death | | 996.34 |
| Escrow account for sale of Englar Shopping Center (ESTIMATED) | | 100,000.00 |
| Escrow sale of Good's Property @ ESTIMATE | | 200,000.00 |
| Total Money Market/CMA Accounts | $ | 507,107.46 |

Insurance Payable to Executor

| | | |
|---|---|---|
| Metropolitan Life Insurance policy 630-365-085 M, payable to estate as beneficiary FACE VALUE | $ | 3,000.00 |
| Metropolitan Life Insurance policy 581-201-338 payable to estate as beneficiary FACE VALUE | | 3,000.00 |
| Total Insurance Payable to Executor | $ | 6,000.00 |

Insurance not Payable to Executor

| | | |
|---|---|---|
| Metropolitan Life Insurance policy 16 263 729 payable in equal shares to decedent's seven children as beneficiaries | $ | 3,000.00 |
| Total Ins. not Payable to'Exec | $ | 3,000.00 |

Estate Inventory (Continued)

Tangible Personal Property

| | | |
|---|---|---|
| 1996 Chevy Blazer @ ESTIMATE | $ | 6,000.00 |
| 2000 Chevy Blazer LT @ ESTIMATE | | 16,000.00 |
| Personal Property @ appraised value | | 1,368.00 |
| Total Tangible Personal Property | $ | 23,368.00 |

Real Property

| | | |
|---|---|---|
| 3 tracts of Commercial Real Estate on Lombard St @ ESTIMATE | $ | 800,000.00 |
| 46 arces unimproved real estate in East Hempfield Township @ ESTIMATED | | 500,000.00 |
| McDonald's located on a commercial tract of land 2891 Philadelphia Avenue, Chambersburg, PA @ ESTIMATE | | 180,000.00 |
| Real Estate known as Jonathon Way unimproved Lot @ ESTIMATE | | 20,000.00 |
| Total Real Property | $ | 1,500,000.00 |

Notes

| | | |
|---|---|---|
| Stonybrooke, LLC Note @ ESTIMATE (FACE VALUE OF NOTE) | $ | 100,000.00 |
| Total Notes | $ | 100,000.00 |

| Par Value | Savings Bonds | | |
|---|---|---|---|
| 50 | U.S. Savings Bonds Series EE | $ | 25.00 |
| | Interest to date of death | | 18.84 |
| 100 | U.S. Savings Bonds Series EE | | 50.00 |
| | Interest to date of death | | 156.52 |

Estate Inventory (Continued)

Par
Value          Savings Bonds

          Total Savings Bonds                    $            250.36

          Total Inventory                      $    2,447,603.04
                                      =================

## INSTRUCTIONS

1. This form is drafted to meet the requirements of Sections 3301-3305 of the P-E-F Code.

2. See Section 3301 as to the necessity for filing Supplemental Inventory of after-discovered property

3. Real Estate situate anywhere in the Commonwealth must be appraised but need not be described by metes and bounds. See Section 3301(a).

4. Real Estate situate outside of the Commonwealth shall be scheduled but not appraised. Section 3301(b).

5. Additional sheets may be inserted where space is found insufficient.



No. 67-01-01157

Filed _____ A.D., 20 _____

INVENTORY OF
THE PERSONAL PROPERTY
AND REAL ESTATE OF

Frank A. Nardo, Sr. a/k/a Francis
Anthony Nardo a/k/a Frank A. Nardo

late of _Springettsbury Township_
in the County of York and Commonwealth
of Pennsylvania, deceased.

Fee $ 10.00

Stock and Leader, P.C.

Frank A. Nardo, Jr.                    Attorney
Supreme Court ID# 80108

# Amended
## INVENTORY

See Instructions on Cover Page

ESTATE OF  Frank A. Nardo, Sr. a/k/a
Francis Anthony Nardo a/k/a Frank
A. Nardo

Late of  Springettsbury Township

Deceased.

NO.  67-01-01157

## AFFIDAVIT OF PERSONAL REPRESENTATIVES

### Commonwealth of Pennsylvania,
### County of York,

ss.

Personally appeared before me, a  notary public  in and for said County,
Diann Cardello and Rosemary Frederick, Executors

who being duly  affirmed  according to law, say _____ that the within Inventory of the personal property
and real estate which were of  Frank A. Nardo, Sr. a/k/a Francis Anthony Nardo a/k/a Frank A. , late of
Springettsbury Tonwship  Deceased, is true and correct to the best of _____ Nardo  their
knowledge, information and belief.

Affirmed  and subscribed to before me

s  14th  day of November  A.D., 20 02

Karen B. Bodnar

Notarial Seal
Karen B. Bodnar, Notary Public
York, York County
My Commission Expires Aug. 30, 2004
Member, Pennsylvania Association of Notaries

Diann Cardello, Co-Executor

Rosemary Frederick, Co-Executor

## INVENTORY

he personal property and real estate situate in the Commonwealth, which were of  Frank A. Nardo, Sr. a/k/a Francis
nthony Nardo a/k/a Frank A. Nardo  late of  Springettsbury Township  in the County of York,

en and made in conformity with the above deposition under Section 3301 and following of the P-E-F Code.

| PERSONAL PROPERTY | DOLLARS | CENTS |
|---|---|---|
| See Attached | | |

## Estate of Frank A. Nardo, Sr.
### Amended Inventory

| No. of Shares | Stocks | | |
|---|---|---|---|
| 2,345 | Allstate Corporation held in certificate shares | $ 77,865.72 | |
| ,755.6590 | Allstate Corporation held in dividend reinvestment account | 91,501.66 | |
| 140 | Metlife, Inc. | 4,100.60 | |
| 285.2320 | Sears Roebuck & Company held in dividend reinvestment account | 12,942.40 | |
| 2568 | Sears Roebuck & Company held in certificate shares | 116,523.00 | |
| | Total Stocks | | 302,933.38 |

### Cash

| | | |
|---|---|---|
| Binkley & Ober, Inc., refund of credit balance | 240.58 | |
| Blue Cross, claim payment | 212.11 | |
| Capital BlueCross/Pennsylvania BlueSheild, refund of insurance premium | 158.45 | |
| Cash found in wallet | 150.00 | |
| Commonwealth of Pennsylvania, refund on 2000 Personal Income tax filed 10/12/2001 | 1,316.00 | |
| Commonwealth of Pennsylvania, refund on 2001 Personal Income tax filed 10/07/2002 | 359.00 | |

Dallastown Area School District, Refund on
2002-2003 School Taxes for Lombard Road
and Jonathan Way North Properties                                          2,205.98

Diane R. Berkeimer, refund on Real Estate
Taxes for York Township Properties                                         240.72

State Auto Insurance Co., refund of
insurance premium                                      172.00
*Adjustment: additional refund from
cancellation of auto policy after sale of
2000 Blazer*                                           417.00              589.00

United States Treasury, refund applied for
on amended 1997 Personal Income Tax                                      192,326.00

                    Total Cash                                                           197,797.84

## Checking/ Savings Accounts

Commerce Bank Checking Account
#0512068925                                          1,593.07
*Adjustment for Date of Death Balance per
bank letter*                                          (0.60)             1,592.47

First Union Checking Account
#1000294036274                                                           100.29

First Union Savings Account
#3000454310026                                                         1,001.32
Interest to date of death                                                 0.02

                Total Checking/Savings Accounts                                          2,694.10

## Money Market/CMA Accounts

Allfirst Bank Money Market Account
#8840253971                                                             566.13
  Interest to date of death                                               0.36

| | | |
|---|---|---|
| Commerce Bank Certificate of Deposit #901189 | 206,111.12 | |
| Interest to date of death | 996.34 | |
| *Adjustment: Certificate of Deposit was a Trust asset and incorrectly shown on Estate's Inventory* | (207,107.46) | - |
| | | |
| Escrow Account from sale of Englar Shopping Center | 100,000.00 | |
| *Adjustment: Included on Inventory based upon oral information, after search for account by Attorney and Executors, no evidence found that such account exits* | (100,000.00) | - |
| | | |
| Escrow from Sale of Good's Property | 200,000.00 | |
| *Adjustment: After investigation, determined that escrow had been released before death to Commerce Bank Certificate of Deposit #901189 (see above)* | (200,000.00) | - |

Total Money Market/ CMA Accounts                                          566.49

Insurance Payable to Executor

| | | |
|---|---|---|
| Metropolitan Life Insurance Co, Policy #630-365-085 M, payable to estate as beneficiary @ Face Value | 3,000.00 | |
| *Adjusted for amount collected* | 3,829.35 | 6,829.35 |
| | | |
| Metropolitan Life Insurance Co , Policy #581-201-338AM, for June Nardo (deceased spouse of Frank Nardo, Sr ) payable to estate as beneficiary | | 923.34 |

| | | |
|---|---:|---:|
| Metropolitan Life Insurance Co., Policy #581-201-338, payable to estate as beneficiary @ Face Value | 3,000.00 | |
| *Adjusted for amount collected* | 6,606.32 | 9,606.32 |

Total Insurance Payable to Executor 17,359.01

## Insurance Not Payable to Executor

| | | |
|---|---:|---:|
| Metropolitan Life Insurance Co., Policy #16-263-729, payable in equal shares to seven of decedent's children as beneficiary @ Face Value | 3,000.00 | |
| *Adjustment: death benefit was not a probate asset* | (3,000.00) | - |

Total Insurance Not Payable to Executor -

## Tangible Personal Property

| | | |
|---|---:|---:|
| 1996 Chevy Blazer @ Estimate | 6,000.00 | |
| *Adjusted per appraisal* | 500.00 | 6,500.00 |
| 2000 Chevy Blazer LT @ Sale Price | | 16,000.00 |
| Personal Property @ appraised value | 1,368.00 | |
| *Adjusted for gifts given prior to death* | (1,178.00) | 190.00 |

Total Personal Property 22,690.00

## Real Property

| | | |
|---|---:|---:|
| Unimproved Commercial Land located on Lombard Road, Parcel 66, 66A, and 67, York Township, York County, Pennsylvania @ Estimated value | 800,000.00 | |
| *Adjustment to value per appraisal by B Daniel Wagner, M A I* | 25,000.00 | 825,000.00 |

| | | |
|---|---|---|
| Unimproved Real Estate located on Marietta Pike and U.S. 30 irregular shaped tract containing 45.9 net acres (46.683 acres gross by deed), East Hempfield Township, Lancaster County, Pennsylvania @ Estimated value | 500,000.00 | |
| *Adjustment to value per appraisal by B. Daniel Wagner, M.A.I.* | 25,000.00 | 525,000.00 |
| Real Estate located on Philadelphia Pike (U.S. 15) and Salem Road (Tr-529), Greene Township, Franklin County, Pennsylvania, Containing .941 acre, site of a McDonald's restaurant @ appraised value by B. Daniel Wagner, M.A.I. | | 180,000.00 |
| Unimproved Residential Lot located on Jonathan Way North, York Township, York County, Pennsylvania @ Estimated value | 20,000.00 | |
| *Adjustment to value per appraisal by B. Daniel Wagner, M.A.I.* | 3,000.00 | 23,000.00 |
| Total Real Property | | 1,553,000.00 |

## Notes

| | | |
|---|---|---|
| $100,000 Stoneybrooke, LLC 6.61% Promissory Note due 09/13/13 @ Face Value | 100,000.00 | |
| *Adjustment per valuation prepared by Beard Miller Company, LLP* | (28,101.00) | 71,899.00 |
| Total Notes | | 71,899.00 |

Savings Bonds

| | | |
|---|---|---|
| 50 U.S. Savings Bonds Series EE | 25.00 | |
| Interest to date of death | 18.84 | |
| 100 U.S. Savings Bonds Series EE | 50.00 | |
| Interest to date of death | 156.52 | |
| Total Savings Bonds | | 250.36 |

Total Value of Amended Inventory                     $ 2,169,190.18

# INSTRUCTIONS

1. This form is drafted to meet the requirements of Sections 3301-3305 of the P-E-F Code.

2. See Section 3301 as to the necessity for filing Supplemental Inventory of after-discovered property.

3. Real Estate situate anywhere in the Commonwealth must be appraised but need not be described by metes and bounds. See Section 3301(a).

4. Real Estate situate outside of the Commonwealth shall be scheduled but not appraised. Section 3301(b).

5. Additional sheets may be inserted where space is found insufficient.



No. 67-01-01157

Filed _____ A.D., 20 ____

INVENTORY OF
THE PERSONAL PROPERTY
AND REAL ESTATE OF

Frank A. Nardo, Sr. a/k/a Francis
Anthony Nardo a/k/a Frank A. Nardo

late of __ Springettsbury Township
in the County of York and Commonwealth
of Pennsylvania, deceased

Fee $ 10.00

Stock and Leader

Frank A. Nardo, Jr.
Supreme Court ID # 80108                    Attorney

149740/001
1675969

# Proof of Publication

in the_____ Court _____ of York County

Of _____ Term, 20

Copy of Advertisement Attached Here

No. _____

THE YORK DISPATCH/YORK SUNDAY NEWS and YORK DAILY RECORD are the names of the daily newspapers of general circulation published continuously for more than the last six months by York Newspaper Company, at its principal place of business, which is at 1891 Loucks Road, York, PA 17404.

The printed copy of the advertisement hereto attached is a true copy, exactly as printed and published, of an advertisement printed in the regular issues of the said The York Dispatch/York Sunday News and York Daily Record published on the following dates, viz:

August 23, 2001

August 30, September 6, 2001

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF YORK                                          SS

Before me, a Notary Public, personally came Kristel Hennessy _____ who being duly sworn deposes and says that he/she is the classified manager of York Newspaper Company, and has personal knowledge of the publication of the adverisement mentioned in the foregoing statement as to the time, place and character of publications are true, and that the affiant is not interested in the subject matter of the above mentioned advertisement.

Sworn and subscribed to before me this

6th    day of September 201

_____
Notary Public

**CO-EXECUTOR'S NOTICE**

Estate of Frank A. Nardo, Sr., a/k/a Francis Anthony Nardo, a/k/a Frank A. Nardo, late of Springettsbury Township, York County, PA, deceased. Letters testamentary on the last will and testament of said decedent having been granted to the undersigned, all persons indebted thereto are requested to make immediate payment, and those having claims or demands against the same, will present them without delay for settlement to the undersigned at 3690 Pleasant Valley Road, York, PA 17402.
Rosemary Frederick Diann Cardello Co-Executors Stock and Leader A Professional Corporation Frank A. Nardo, Jr. Attorney

Notarial Seal
Jean Marie Porter, Notary Public
York Twp., York County
My Commission Expires Mar. 20, 2005

Member, Pennsylvania Association of Notaries

Received Estate of Frank A. Nardo, Sr.

One hundred ninety three ---------88_____ Dollars

                                                           100

in payment of the charge for the publication of above mentioned advertisement and the expense of above affidavit

Advertisement  $ 191.82

               $    2.00

               $

               $ 193.82

# Proof of Publication
## of Legal Advertisement in
# York Legal Record

YORK LEGAL RECORD is the name of a legal newspaper as designated by the Act of Assembly approved April 24, 1931, P.L. 67, established on March 4, 1880, and issued continuously during a period of at least 6 months prior to the date hereof, owned and published by the York County Bar Association, a corporation, having its place of business at 137 East Market Street, in the City of York, Pennsylvania.

The printed copy of the advertisement hereto attached is a true copy, exactly as printed and published, of an advertisement printed in the regular issue of said York Legal Record published on the date following
AUGUST 23, 30 and SEPTEMBER 6, 2001

Jean F. Bednarski
Agent of the York County Bar Association designated and authorized to verify Proofs of Publication of advertisements and notices published in the York Legal Record.

Commonwealth of Pennsylvania  }
County of York                 }  ss:

Before me, LUCINDA J. VAN LAEYS, duly commissioned and residing in said County, personally came Jean F. Bednarski who being by me duly sworn, deposes and says that she is a designated and duly authorized agent of the York County Bar Association to verify proofs of publication of advertisements and notices published in York Legal Record, for and on behalf of said Association, and has personal knowledge of the publication of the advertisement or notice mentioned in the foregoing statement on the day or days above stated and that the allegations in said statement relative to the York Legal Record are true according to the best of her knowledge, information and belief, and that she is not interested, directly or indirectly, in the subject matter mentioned in said advertisement or notice.

Sworn and subscribed
before me this
day of SEPTEMBER 2001

*Jean F. Bednarski*

*Lucinda J. Van Laeys*

> Notarial Seal
> Lucinda J Van Laeys, Notary Public
> York, York County
> My Commission Expires Oct. 2, 2004
> Member Pennsylvania Association of Notaries

STOCK AND LEADER

Received of     FRANK A. NARDO, JR.
FIFTY AND 00/100 Dollars in payment of the charge for the publication of the above-mentioned advertisement and the expense of the above affidavit.

Advertisement:   $50.00

                 $50.00

YORK COUNTY BAR ASSOCIATION

Copy of Advertisement
NOTICE is hereby given that Letters of Administration or Testamentary have been granted by the Register of Wills of York County, Pennsylvania, upon the estates of the following named decedents, and all persons indebted to any of said estates are requested to make immediate payment, and those having claims against any of said estates shall make them known without delay, to the respective Executor or Administrator.

FRANK A. NARDO, SR. a/k/a FRANCIS AN-THONY NARDO a/k/a FRANK A. NARDO late of Springettsbury Twp., York Co., PA, deceased. Rosemary Frederick and Diann Cardello, 3690 Pleasant Valley Road, York, PA 17402, Co-Executors. Stock and Leader, Frank A Nardo, Jr., Attorney.                              8-23-31

BUREAU OF INDIVIDUAL TAXES
INHERITANCE TAX DIVISION
DEPT. 280601
HARRISBURG, PA 17128-0601

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF REVENUE**

NOTICE OF INHERITANCE TAX
APPRAISEMENT, ALLOWANCE OR DISALLOWANCE
OF DEDUCTIONS AND ASSESSMENT OF TAX



| | |
|---|---|
| DATE | 12-02-2002 |
| ESTATE OF | NARDO          FRANK     A |
| DATE OF DEATH | 08-07-2001 |
| FILE NUMBER | 67 01-1157 |
| COUNTY | YORK |
| ACN | 101 |

FRANK A NARDO
STOCK & LEADER
PO BOX 5167
YORK          PA 17405

Amount Remitted

MAKE CHECK PAYABLE AND REMIT PAYMENT TO:

REGISTER OF WILLS
YORK CO COURT HOUSE
YORK, PA  17401

---

CUT ALONG THIS LINE    ►    RETAIN LOWER PORTION FOR YOUR RECORDS    ◄

REV-1547 EX AFP (01-02) NOTICE OF INHERITANCE TAX APPRAISEMENT, ALLOWANCE OR
DISALLOWANCE OF DEDUCTIONS AND ASSESSMENT OF TAX

ESTATE OF  NARDO          FRANK     A FILE NO. 67 01-1157    ACN  101    DATE 12-02-2002

TAX RETURN WAS: ( X ) ACCEPTED AS FILED    ( ) CHANGED

RESERVATION CONCERNING FUTURE INTEREST - SEE REVERSE

APPRAISED VALUE OF RETURN BASED ON:  ORIGINAL RETURN

| | | |
|---|---|---|
| 1. Real Estate (Schedule A) | (1) | 1,553,000.00 |
| 2. Stocks and Bonds (Schedule B) | (2) | 303,183.74 |
| 3. Closely Held Stock/Partnership Interest (Schedule C) | (3) | .00 |
| 4. Mortgages/Notes Receivable (Schedule D) | (4) | 71,899.00 |
| 5. Cash/Bank Deposits/Misc. Personal Property (Schedule E) | (5) | 222,432.43 |
| 6. Jointly Owned Property (Schedule F) | (6) | .00 |
| 7. Transfers (Schedule G) | (7) | 3,834,647.92 |
| 8.   Total Assets | (8) | 5,985,163.09 |

NOTE: To insure proper credit to your account, submit the upper portion of this form with your tax payment.

APPROVED DEDUCTIONS AND EXEMPTIONS:

| | | |
|---|---|---|
| 9. Funeral Expenses/Adm. Costs/Misc. Expenses (Schedule H) | (9) | 214,878.41 |
| 10. Debts/Mortgage Liabilities/Liens (Schedule I) | (10) | 230,203.39 |
| 11.   Total Deductions | (11) | 445,081.80 |
| 12.   Net Value of Tax Return | (12) | 5,540,081.29 |
| 13.   Charitable/Governmental Bequests; Non-elected 9113 Trusts (Schedule J) | (13) | .00 |
| 14.   Net Value of Estate Subject to Tax | (14) | 5,540,081.29 |

NOTE:  If an assessment was issued previously, lines 14, 15 and/or 16, 17, 18 and 19 will
reflect figures that include the total of ALL returns assessed to date.

ASSESSMENT OF TAX:

| | | | | |
|---|---|---|---|---|
| 15. Amount of Line 14 at Spousal rate | (15) | .00 | x 00 = | .00 |
| 16. Amount of Line 14 taxable at Linnal/Class A rate | (16) | 5,515,081.29 | x 045 = | 248,178.66 |
| 17. Amount of Line 14 at Sibling rate | (17) | .00 | x 12 = | .00 |
| 18. Amount of Line 14 taxable at Collateral/Class B rate | (18) | 25,000.00 | x 15 = | 3,750.00 |
| 19. Principal Tax Due | | | (19) | 251,928.66 |

TAX CREDITS:

| PAYMENT DATE | RECEIPT NUMBER | DISCOUNT (+) INTEREST/PEN PAID (-) | AMOUNT PAID | |
|---|---|---|---|---|
| 05-07-2002 | YK002750 | .00 | 254,000.00 | |
| | | | | |
| | | TOTAL TAX CREDIT | 254,000.00 | |
| | | BALANCE OF TAX DUE | 2,071 34CR | |
| | | INTEREST AND PEN. | | |
| | | TOTAL DUE | | |

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF REVENUE

INHERITANCE-TAX
STATEMENT OF ACCOUNT



BUREAU OF INDIVIDUAL TAXES
INHERITANCE TAX DIVISION
DEPT. 260601
HARRISBURG, PA 17128-0601

| | |
|---|---|
| DATE | 12-03-2002 |
| ESTATE OF | NARDO            FRANK      A |
| DATE OF DEATH | 08-07-2001 |
| FILE NUMBER | 67 01-1157 |
| COUNTY | YORK |
| ACN | 101 |

FRANK A NARDO
STOCK & LEADER
PO BOX 5167
YORK        PA 17405

Amount Remitted

MAKE CHECK PAYABLE AND REMIT PAYMENT TO:

REGISTER OF WILLS
YORK CO COURT HOUSE
YORK, PA 17401

NOTE: To insure proper credit to your account, submit the upper portion of this form with your tax payment.

CUT ALONG THIS LINE    ▶    RETAIN LOWER PORTION FOR YOUR RECORDS    ◀
REV-1607 EX AFP (01-02)    ✱✱✱ INHERITANCE TAX STATEMENT OF ACCOUNT ✱✱✱

ESTATE OF NARDO        FRANK      A FILE NO. 67 01-1157    ACN 101      DATE 12-03-2002

THIS STATEMENT IS PROVIDED TO ADVISE OF THE CURRENT STATUS OF THE STATED ACN IN THE NAMED ESTATE. SHOWN BELOW
IS A SUMMARY OF THE PRINCIPAL TAX DUE, APPLICATION OF ALL PAYMENTS, THE CURRENT BALANCE, AND, IF APPLICABLE,
A PROJECTED INTEREST FIGURE.

DATE OF LAST ASSESSMENT OR RECORD ADJUSTMENT:  11-25-2002

PRINCIPAL TAX DUE:                                                              251,928.66

PAYMENTS (TAX CREDITS):

| PAYMENT DATE | RECEIPT NUMBER | DISCOUNT (+) INTEREST/PEN PAID (-) | AMOUNT PAID |
|---|---|---|---|
| 05-07-2002 | YK002750 | .00 | 251,928.66 |

| | |
|---|---|
| TOTAL TAX CREDIT | 251,928.66 |
| BALANCE OF TAX DUE | .00 |
| INTEREST AND PEN. | .00 |
| TOTAL DUE | .00 |

* IF PAID AFTER THIS DATE, SEE REVERSE
SIDE FOR CALCULATION OF ADDITIONAL INTEREST.

IF TOTAL DUE IS LESS THAN $1
NO PAYMENT IS REQUIRED.

IF DUE IS REFLECTED AS EXCEPT,
WILL BE DUE A REFUND.

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF REVENUE

**INHERITANCE** TAX
STATEMENT OF ACCOUNT



BUREAU OF INDIVIDUAL TAXES
INHERITANCE TAX DIVISION
DEPT. 280601
HARRISBURG, PA 17128-0601

REV-1607 EX AFP (01-02)

| | |
|---|---|
| **DATE** | 12-03-2002 |
| **ESTATE OF** | NARDO        FRANK        A |
| **DATE OF DEATH** | 08-07-2001 |
| **FILE NUMBER** | 67 01-1157 |
| **COUNTY** | YORK |
| **ACN** | 201 |

FRANK A NARDO
STOCK & LEADER
PO BOX 5167
YORK        PA 17405

Amount Remitted

**MAKE** CHECK PAYABLE **AND REMIT** PAYMENT TO:

REGISTER OF WILLS
YORK CO COURT HOUSE
YORK, PA  17401

NOTE: To insure proper credit to your account, submit the upper portion of this form with your tax payment.

CUT ALONG THIS LINE ► RETAIN LOWER **PORTION FOR YOUR RECORDS** ◄
REV-1607 EX AFP (01-02)    *** INHERITANCE TAX STATEMENT OF ACCOUNT ***

ESTATE OF NARDO        FRANK    A **FILE NO. 67 01-1157    ACN 201    DATE** 12-03-2002
THIS STATEMENT IS PROVIDED TO ADVISE OF THE CURRENT STATUS OF THE STATED ACN IN THE NAMED ESTATE. SHOWN BELOW
IS A SUMMARY OF THE PRINCIPAL TAX DUE, APPLICATION OF ALL PAYMENTS, THE CURRENT BALANCE, AND, IF APPLICABLE,
A PROJECTED INTEREST FIGURE.

DATE OF LAST ASSESSMENT OR RECORD ADJUSTMENT: 11-25-2002

PRINCIPAL TAX DUE: _____        144,352.69

PAYMENTS  (TAX CREDITS):

| PAYMENT DATE | RECEIPT NUMBER | DISCOUNT (+) INTEREST/PEN PAID (-) | AMOUNT PAID |
|---|---|---|---|
| 05-07-2002 | YK002751 | .00 | 77,100.00 |
| 05-07-2002 | YK002750 | .00 | 2,071.34 |
| 11-07-2002 | YK003849 | .00 | 65,181.35 |

BALANCE OF UNPAID INTEREST/PENALTY AS OF 11-08-2002

| | |
|---|---|
| TOTAL TAX CREDIT | 144,352.69 |
| BALANCE OF TAX DUE | .00 |
| INTEREST AND PEN. | 1,966.91 |
| TOTAL DUE | 1,966.91 |

* IF PAID AFTER THIS DATE, SEE REVERSE
  SIDE FOR CALCULATION OF ADDITIONAL INTEREST.

  IF TOTAL DUE IS LESS THAN $1
  NO PAYMENT IS REQUIRED

  DUE IS REFLECTED
  BE DUE A REFUND       OF THIS FORM FOR