Finally, I note that I understand that whatever proof is demanded may not be infallible, but is undertaken with my concern for and with Richard's best interests at heart.    OR

2. If Richard predeceases the occurrence of the condition in subparagraph "1." in that he fails to establish an initial five year period of sobriety prior to his death, the balance of the Trust principal and accumulated income shall pass to my then surviving children, per capita;    OR

if Richard establishes his initial five year period of sobriety but, in the determination of a majority of my Trustees fails in his sobriety in the subsequent five year period, the then accumulated balance of the Trust shall likewise pass to my then-surviving children, per capita;    OR

if Richard establishes his sobriety for the first five years but predeceases his completion of the subsequent five year period and he dies sober, the accumulated balance of the trust shall pass to Richard's estate.

B. Further, if, in the determination of a majority of my Individual Trustees, Richard is sober and is making progress to the goals outlined above, a majority of my Individual Trustees may direct my Corporate Trustee to make distributions of principal or income in order to provide for Richard's reasonable living expenses. Such a determination shall be in the sole and absolute discretion of a majority of my Individual Trustees. It is my intention that in exercising discretion with regard to any distribution hereunder of principal or income, my Individual Trustees shall consider funds available to Richard from all sources. These expenses may include: shelter, provided however, that, if real estate is purchased, the title to said real estate shall remain vested in my Corporate Trustee until such time as all other conditions of this Trust are fulfilled; lease payments for shelter; food; medical care; counseling; drug rehabilitation expenses, provided all other conditions herein are met; and education expenses. To the extent practicable, my Corporate Trustee is directed to make such distributions hereunder directly to the provider of such property or service and not to Richard.

C. Richard's brothers and sisters should encourage Richard in his endeavor to remain sober. If Richard fails in his pursuit of sobriety and his failure has been aided by a brother or sister, that brother or sister shall forfeit any right, title or interest that he/she may otherwise have as a contingent remainderman in this Trust.

D. I hereby grant my Corporate Trustee the power, without court approval, to terminate this Trust if the principal and any accumulated or undistributed income is of an amount which my Corporate Trustee deems to be too small to practically remain in trust. In this event, my Corporate Trustee is authorized to make immediate distribution to my personal representatives who are authorized to further distribute the property to Richard, or use it for Richard's benefit, as my personal representatives deem appropriate and consistent with the intention and guidelines set forth in this Article "Fifth".

E. Any corporate fiduciary serving hereunder shall receive compensation for its services hereunder in accordance with a fee agreement entered into between it and me during my lifetime, or if there is no such agreement, the corporate fiduciary shall receive compensation in accordance with its Schedule of Fees in effect from time to time during the period in which its services are performed.

F. All shares of principal and income held in trust shall be held and disbursed free from anticipation, assignment, pledge, or obligation of the beneficiaries and any of them, and shall not be subject to any execution, attachment, levy or sequestration or other claims of the creditors of the said beneficiaries or any of them.

G. In addition to the powers enumerated in Article "Eighth" in my Will dated April 22, 1999, I hereby grant my Corporate Trustee the power to invest and reinvest in all forms of property without being confined to legal investments and without regard for the principal of diversification. It is my intention that my Corporate Trustee will make such investment decisions giving due consideration to the input of a majority of my Individual Trustees.

H. Except for instances of willful misconduct, recklessness, or gross negligence, I expressly relieve my Trustees, Corporate or Individual as appropriate to their respective positions, of any liability or responsibility whatsoever for any act or failure to act by, or for following the advice of such accountants, agents, attorneys, investment counsel, brokers, bank or trust company, so long as my Trustees exercise due care in their selection.

I. Upon the written request of a majority of my Individual Trustees of any trust hereunder then serving, delivered to the Corporate Trustee then serving, the Corporate Trustee of such trust shall promptly resign; provided that the Individual Trustees, must appoint a corporation as successor trustee that is (i) organized under the laws of the United States or any State thereof, (ii) possessed of trust powers, and (iii) has trust assets of at least One Hundred Million Dollars ($100,000,000). Any power of appointment and removal under this Paragraph shall not be extinguished by a single exercise; provided that the power to remove a corporate trustee shall not be exercised more frequently than once every two years.

J. Any Trustee while serving hereunder may resign without court approval by written notice delivered to the co-Trustees and to Richard. In the case of my Corporate Trustee, such notice shall be provided thirty (30) days in advance of the effective date of the resignation. Should a corporate trustee serving hereunder provide the Individual Trustees notice of resignation, a majority of my Individual Trustees shall appoint a successor corporate trustee which meets the requirements outlined in Paragraph "I", above. The corporate trustee's resignation shall be complete upon transfer of all remaining trust assets to the newly appointed corporate trustee.

K. No Trustee taking office shall be liable in any way for the acts or

omissions of any Trustee prior to such Trustee's assumption of office and shall have no duty to review the performance of a Trustee prior to that time.

L. Each Individual Trustee of any trust hereunder then serving may appoint in writing an individual to serve in his or her place; provided that any such appointment shall be that of one of my children, excluding Richard.

M. Any inconsistencies which arise in the interpretation of this trust document or which arise in its implementation shall be resolved in favor of my intent to encourage Richard's sobriety and consistent with the other terms and provisions contained herein. Should any provision of this Trust be deemed to be contrary to law or policy, the same shall be stricken or otherwise conformed to such law or policy.

N. I reiterate that the foregoing trust provisions apply to and control only the share which may be due my son Richard Nardo, all other shares of my residuary estate shall pass outright and without restriction.

I note here to Richard that my first inclination was to provide you with nothing, for fear that doing so would only serve to prolong your addiction and waste more of what you have already wasted and which I have worked so hard to obtain. Your brother, Frank, has helped me construct a plan which, hopefully, will provide an incentive to you to clean yourself up.

## Sixth

All shares of principal and income hereby given shall be free from anticipation, assignment, pledge, or obligation of the beneficiaries and any of them, and shall not be subject to any execution, attachment, levy or sequestration or other claims of the creditors of the said beneficiaries or any of them.

## Seventh

I direct that any and all Inheritance, Estate and Transfer Taxes imposed upon my estate passing under my will or otherwise, including but not limited to those said taxes accruing due to property transferred pursuant to the "Frank A. Nardo, Sr. Trust Number One", shall be paid out of the principal of my residuary estate. I limit the foregoing only in that I intend that any Generation Skipping Tax Liability incurred by my estate shall be paid by the Skip Persons taking hereunder, by trust, or otherwise, and said Generation Skipping Tax amount shall be deducted pro rata from each Skip Person's distribution whether passing by will, trust, or otherwise.

## Eighth

My personal representatives, trustee, and their successors, shall have the following powers, in addition to those vested in them by law, or as set forth or limited elsewhere in this document, as appropriate to their respective positions and as otherwise set forth, limited or modified in this my last will and testament, applicable to all property, whether principal or income, including property held for minors, exercisable without court approval, and effective until actual distribution of all property:

A. to retain in the form received, and to sell either at public sale or private sale any real or personal property;

B. to manage, mortgage, lease, option, divide, alter, repair, and improve real property and generally to exercise all rights of real estate ownership;

C. to invest and reinvest in all forms of property, but I do intend that any investments made by my personal representatives on behalf of my estate be those confined to legal investments;

D. to exercise any option or rights arising from ownership of investments;

E. to compromise claims without court approval and without consent of any beneficiary;

F. to borrow money and to pledge any real or personal property as security for the repayment thereof;

G. to continue the operation of my real estate development business to the extent that it may be necessary, and I hereby grant my personal representatives all the powers necessary for the conduct of the said business until the same may be liquidated or otherwise disposed of in accordance with my wishes contained herein, which said powers shall include, but not specifically be limited to, the aforesaid powers contained herein this Article "Eighth";

H. to employ accountants, agents, attorneys, investment counsel, brokers, bank or trust company and to pay a reasonable fee for their services. I direct, however, that it is my intent that my personal representatives retain the services of Judy Doviak with the accounting firm of Kuhn and Doviak, York, PA, to perform any and all accounting functions relative to my estate, including as may be necessary for the conduct of the operation of my business; Judy has been very helpful, fair and honest throughout my years in business. It is also my intent that my personal representatives retain the services of Ed Roberts, Esquire, of York, PA, as the attorney for my estate and to perform any legal functions as may be necessary to the conduct of my business, provided, however, that he enter into a reasonable fee agreement with my personal representatives, of which my personal representatives shall look to my son, Frank, for direction in this specific regard. I trust that Ed will handle my estate fairly, honestly, competently, and with the best interest of all my children at heart.

I. To distribute in cash, in kind, or partly in each, and to cause any share to be composed of cash, property, or undivided fractional shares in property different in kind from any other share.

### Ninth

To the extent I am able by law, I direct that no trustee, personal representative, guardian, or other fiduciary named, nominated, or appointed in this, my last will and testament, shall be required to post any bond or give any security of any type for any purpose whatsoever and in any jurisdiction.

### Tenth

If any beneficiary or remainderman under this Will in any manner, directly or indirectly, contests or attacks this Will or any of its provisions, or objects to the accounts or actions of my fiduciaries, without probable cause, such beneficiary shall pay all costs, including but not limited to attorneys fees, arising in connection



Page 7 of 8

with such contest, attack or objection incurred by my estate, such trust or such fiduciary personally. In the event that such beneficiary does not prevail in such action, any share or interest in my estate or such trust which would otherwise pass to such beneficiary or remainderman under this Will shall be revoked and the property consisting of such share shall be disposed of in the manner provided herein as if that contesting beneficiary or remainderman had predeceased me. I add here that I understand completely the import of this paragraph and I intend that it be implemented fully and to the extent allowable by law. I have done my best for my family, and I feel that I owe no one anything and certainly no one any more or less that I have herein provided. Further, I can think of no less-deserving persons to share in what I have worked so hard for than the attorneys who would profit needlessly from such a will contest.

### Eleventh

Finally, I nominate, constitute, and appoint my daughters, Rosemary Frederick and Diann Cardello, as Co-Executrixes of this my last will and testament. It is my intent that Rose and Diann act jointly and with my interest and the interest of all my sons and daughters at heart. I further intend that Rose and Diann have the support and input of their brothers in fulfilling their duties as co-Executrixes, and I am confident that they will be able to work together and in concert. In the event of either daughter's death, resignation, renunciation, or inability to act for any reason whatsoever as my co-executrix, I intend that the surviving or otherwise able and willing daughter to act alone as my Executrix. As I intend their responsibilities to be carried out with the aid of my sons, and the attorney and accountant for the estate, I hereby direct that Rose and Diann each receive the sum of $10,000.00 as their compensation as my personal representatives.

In Witness Whereof, I have hereunto set my hand and seal to this my Last Will and Testament, consisting of eight (8) typewritten pages, including this page, but not including the page following which bears the acknowledgment and affidavit; the first seven (7) pages of which bear my signature and this date in the left margin for the purpose of identification, this 13th day of October, 2000.

_____
Frank A. Nardo, Sr.

Signed, sealed, published, and declared by the above named testator, as and for his last will and testament in the presence of us, who, at his request, in his sight and presence, and in the sight and presence of each other, have hereunto subscribed our names as witnesses.

_____ residing at 2093 HOLLYWOOD DR, YORK PA 17403
JUDITH A DOVIAK

_____ residing at 3053 FAITH LN, RED LION
VICKIE L. EISENHART

## ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA, COUNTY OF YORK

I, Frank A. Nardo, Sr., the testator whose name is signed to the attached or foregoing instrument, having been duly qualified according to law, do hereby acknowledge that I signed and executed the instrument as my Last Will; and that I signed it willingly and as my free and voluntary act for the purposes therein expressed.

Sworn to or affirmed and subscribed and acknowledged before me by Frank A. Nardo, Sr., the testator, this 13th day of October, 2000.

_____
Frank A. Nardo, Sr.

_____
Notary Public

[NOTARIAL SEAL]

## AFFIDAVIT

COMMONWEALTH OF PENNSYLVANIA, COUNTY OF YORK

We, (or I) JUDITH A. DOVIAK, and VICKIE L. EISENHART, the witness(es) whose name(s) are signed to the attached or foregoing instrument, being duly qualified according to law, do depose and say that we were (I was) present and saw the testator sign and execute the instrument as his Last Will; that the testator signed willingly and executed it as his free and voluntary act for the purposes therein expressed; that each subscribing witness in the hearing and sight of the testator signed the will as a witness; and that to the best of our (my) knowledge the testator was at that time 18 or more years of age, of sound mind and under no constraint or undue influence.

Sworn to or affirmed and subscribed to before me by JUDITH A. DOVIAK and VICKIE L. EISENHART witness(es), this 13th day of October, 2000.

_____
Witness (Judith A. Dovcak)

_____
Witness (Vickie L. Eisenhart)

_____
Notary Public

15

EXHIBIT B

Petition for Adjudication                                         Testate Estate

# In the Court of Common Pleas of York County, Pennsylvania, Orphans' Court Division

ESTATE OF Frank A. Nardo, Sr., a/k/a            No. 67-01-01157
Francis Anthony Nardo, a/k/a
Frank A. Nardo, Deceased

Late of Springettsbury Township
York County, Pennsylvania

COPY

The Second and Intermediate Account of Diann Cardello and Rosemary Frederick, Co-Executrices was filed in the Office of the Register of Wills of York County on August 29, 2003 and advertised for audit on October 1, 2003.

The petition of Diann Cardello and Rosemary Frederick, Co-Executrices,

## Respectfully Represents:

That the said testator died on August 7, 2001, testate, married, and leaving to survive a spouse named Joyce E. Keesey-Nardo.

That the will dated October 13, 2000, and codicils dated October 14, 2000, and October 28, 2000 were duly admitted to probate in the Office of the Register of Wills of York County on August 13, 2001, and copies of the same are hereto attached.

That letters of testamentary were issued on August 13, 2001 to Diann Cardello and Rosemary Frederick.

That an inventory was filed on November 13, 2001 and an Amended Inventory was filed on November 15, 2002, copies of which are hereto attached.

That the spouse did file an election to take against the will on January 15, 2002, which election was later withdrawn by Agreement dated December 3, 2002, which agreement was entered as an Order of this Court dated December 5, 2002.

That the testator did not marry after the execution of the will, and no children were born to the testator or lawfully adopted by him thereafter.

That notice of the granting of letters was advertised in the York Legal Record and in The York Dispatch/York Daily Record, according to law.

That the estate is subject to Pennsylvania estate and inheritance tax, and the following amounts have been paid on account of the tax:

$144,352.69 being on account of estate tax
$251,928.66 being on account of inheritance tax

On December 2, 2002 an Appraisement was issued accepting the Estate's PA Inheritance Tax Return as filed.

That the present status of the Family Exemption is as follows: Claimed by and paid to Diann Cardello.

That set forth in the following Schedule "A" is a full and true statement of all parties in interest, their relationship, and proportionate interests under the will.

If any beneficiary is deceased, the name, date of death, the name of the personal representative thereof, and the names of the persons entitled to participate in their stead, also are set forth.

If any share has been assigned or attached, full data is inference thereto is set forth.

## SCHEDULE "A"

| Names | Relationship | Interest |
|---|---|---|
| Judith A. Doviak | Friend | $25,000.00 Cash Bequest |
| Daniel W. Nardo | Son | 1996 Chevrolet Blazer and 1/8 share of Estate |
| Diann Cardello | Daughter | 1/8 share of Estate |
| Rosemary Frederick | Daughter | 1/8 share of Estate |
| Fiore L. Nardo | Son | 1/8 share of Estate |
| June Aline Nardo-Harrison | Daughter | 1/8 share of Estate |
| Richard V. Nardo | Son | 1/8 share of Estate held in Trust |
| Frank A. Nardo, Jr. | Son | 1/8 share of Estate |
| James A. Nardo | Son | 1/8 share of Estate |
| Joyce E. Keesey | Spouse | Election against the Will (Withdrawn) |

(all above-named parties are *sui juris*)

## SCHEDULE "B"

A true statement of debts due by distributes:

| Names | Relationship | Amount | Remarks |
|---|---|---|---|

(See Attached Addendum "A" for contested claims, other known debts of decedent believed to be paid.)

That any unusual question requiring adjudication which counsel may deem helpful to the Court are as follows:

      Please see attached Addendum "A".

A statement of any material facts not already given is a follows:

      Please see Attached Addendum "A".

      That the Notice of the filling of the account has been given as required by Rules 6.3 and 5.5 of the Supreme Court O. Ct. Rules; a copy of the account has been filed as required by Rules 6.7 and 6.8 of said Rules; notice has been given as required by Section 3330 of the P.E.F. Code; and a certificate has been attached to the account in compliance with York County O. Ct. Rule 6.3.1.

      That attached to the account are proofs of advertisement of the grant of letters and attached to this petition is a typewritten copy of the will and any codicils thereto, and of the inventory and appraisement.

      Your Petitioners therefore respectfully pray that the Court: confirm the actions of Petitioners as noted in this Second and Partial Account; declare the contested claims abandoned; and declare a right of first refusal provided for in Decedent's Will to be divested.

Stock and Leader

_____
Frank A. Nardo, Jr., Esquire
Susquehanna Commerce Center, 6th E
221 West Philadelphia Street
York, PA 17404
(717) 846-9800
(Counsel for Petitioners)

_____
Diann Cardello,           Petitioner

_____
Rosemary Frederick,       Petitioner

York County:

      The above petitioners, being duly sworn, depose and say that the statements made in the foregoing Petition and Schedules hereto attached are true to the best of their knowledge and belief.

Sworn and Subscribed this _____
day of _____, 2003

_____
(Title)

Notarial Seal
Annette L. Fisher, Notary Public
City Of York, York County
My Commission Expires July 4, 2006
Member, Pennsylvania Association Of Notaries

_____
Diann Cardello           Petitioner

_____
Rosemary Frederick       Petitioner

## ADDENDUM "A"

### Purpose of Account

Rosemary Frederick and Diann Cardello, Co-Executrices ("Co-Executrices") of the Estate of Frank A. Nardo, Sr. ("Estate"), by and through their attorneys, Stock and Leader, Attorneys at Law, file this Second and Intermediate Account to inform all interested in the Estate of their actions during their administration from the date of the First and Partial Account to the date of this Second and Intermediate Account. Co-Executrices seek Court confirmation of their actions, ask the Court to declare certain claims against the Estate to be abandoned, and to declare that a right of first refusal, provided for in Decedent's Will, to purchase certain real estate held by the Estate to be divested.

### Frank A. Nardo, Sr. Trust No. One

On August 27, 1999, the Decedent created an Intervivos Trust ("Trust"). The beneficiaries of the Trust are identical to the residuary beneficiaries of the Decedent's Will and the interests held by all are identical and equal. It is noted for the Court that a First and Intermediate Account for the Trust is to filed on the same date as the instant account and is, likewise, before the Court for audit.

### Notice

1) Notice of Audit has been given to the Settlor's surviving spouse, Joyce E. Keesey-Nardo, as required by Orphan's Court Rule 6.3. On or about January 15, 2002. Joyce E. Keesey-Nardo filed an election to take against the Will, Codicils, all conveyances and trusts of Frank A. Nardo, Sr., however, the said election was withdrawn by agreement dated December 3, 2002, which agreement was entered as an Order of this Court dated December 5, 2002. As part of said Order, Joyce E. Keesey-Nardo is barred from asserting any claim or objection to this Account,

however, she is being noticed, nevertheless.

2) Notice of Audit has been given to the Pennsylvania Department of Revenue and the Internal Revenue Service. Because of the fully revocable nature of the Trust prior to Settlor's death, the Trust assets were taxable for Pennsylvania and Federal estate and inheritance tax purposes. Settlor's estate (the "Estate") paid federal and state estate and inheritance taxes for the Estate and for the assets comprising the Trust. A Notice and Appraisement issued by the Pennsylvania Department of Revenue and an Estate Closing Letter issued by the Internal Revenue Service, evidencing payment of all such taxes, have been filed at this Docket. Both the I.R.S. and the PA Department of Revenue are being noticed, nevertheless.

### Contested Claims

The Co-Executrices have been notified of or otherwise are aware of certain claims made against the Estate which the Co-Executrices contest. The claimants and the amount of the disputed claims are as follows:

| | Claimant | Amount Claimed |
|---|---|---|
| 1) | B & D Masonry, Inc. | $2,500.00 |
| 2) | B & M Contractor | $ 752.00 |
| 3) | Sanctuary Garden Center & Landscaping, Inc. | $2,580.00 |
| 4) | David T. Mountz, Esquire | $4,400.00 |

Co-Executrices are proposing to pay nothing on these claims, and have mailed a Notice of the Filing of the Account to the said claimants notifying said claimants that the Co-Executrices propose to pay nothing on their respective contested claims. Claims Nos. 1, 2, and 3 were also similarly noticed at the time of filing the First and Partial Account for the Estate, and such claims were not pressed at or before Audit of the First Account. Co-Executrices ask the

Court to declare all the aforesaid claims abandoned.

### Payment of Inheritance and Estate Taxes

Although the Estate was responsible under the Will for the payment of all estate and inheritance taxes for property passing under the Will or otherwise, to the extent that the Estate was unable to pay all such taxes, the Trust, by its terms, was to pay the portion of the said taxes attributable to Trust assets for which the Estate lacked funds to pay. Due to a lack of liquid assets in the Estate, in order to timely pay the estate and inheritance taxes, the Trust loaned the Estate the sum of $2,432,400.00. The Estate and the Trust entered into a Note/Loan Agreement, secured by mortgages on real estate, memorializing the loan agreement. The Estate has paid funds back to the Trust, in large part from the net proceeds of the sale of two parcels of real estate held by the Estate, and the current balance carried on this Account for this loan, $ 1,644,783.03, is at the face principal amount, less repayments to date. The amount of the remaining principal of the loan which will be repaid depends on the selling price received for remaining tract of real estate held by the Estate and the undetermined amount of the remaining funds of the Estate, net of expenses, which will likewise be paid over to the Trust on account of this loan.

### Right of First Refusal to Purchase Real Estate

Pursuant to Article Fourth of Decedent's Will, Decedent provided for a right of first refusal to purchase real estate owned by Decedent at the time of his death. Further, Article Fourth provided for a procedure to determine rights of first refusal for any such real estate. On January 8, 2003, Albert G. Blakey, Esquire, on behalf of the Estate, conducted the disposition procedure as outlined in Article Fourth of Decedent's Will. By the conclusion of said proceedings, no right of first refusal remained. Attached hereto is an original Affidavit executed by Attorney Blakey describing the disposition procedure. Petitioners incorporate said Affidavit

herein by reference and note for the Court, and any interested parties, that the disposition scheme provided for in Article Fourth of Decedent's Will was faithfully executed and that no right of first refusal remains as to any real estate held by Decedent at the time of his death.

As a further note, Petitioners draw the Court's attention to a parcel of real estate held by Decedent at the time of his death in Franklin County, Pennsylvania, which has been described in various filings with the Court at this docket, as the "McDonald's Property". The McDonald's Property, unlike the other three parcels of real estate noted in said Affidavit and this Account, was the subject of a Property Settlement Agreement entered into by Decedent with Joyce E. Keesey-Nardo, and was therefore not available to members of Decedent's family under Article Fourth of Decedent's Will. The McDonald's Property has since been conveyed to Keesey-Nardo.

Petitioners ask the Court to decree that the terms of Decedent's Will, as outlined at Article Fourth, were followed and that no right of first refusal remains as to any parcel of real estate held by Decedent at the time of his death, all such rights being divested.

## Specific Relief Sought in Decree

In addition to that deemed appropriate by the Court, Petitioners respectfully request that the Court:

1) Confirm and approve the actions of the Co-Executrices as noted in the Second and Intermediate Account;

2) Declare the contested claims noted herein to be abandoned; and

3) Declare the disposition procedure outlined in Article Fourth of Decedent's Will ro be faithfully followed and, consequently, all rights of first refusal to purchase real estate owned by Decedent at death to be divested.

F \\SERS FAN ESTATES NARDO ADDEN A

IN THE COURT OF COMMON PLEAS, YORK COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

ESTATE OF FRANK A. NARDO, SR. : No. 67-01-01157
a/k/a FRANCIS ANTHONY NARDO :
a/k/a FRANK A. NARDO, :
late of Springettsbury Township, :
          Deceased :

## AFFIDAVIT

AND NOW, TO WIT, this 22 day of August, 2003, personally appears before me Albert G. Blakey, known to me, who upon oath deposes and says:

1. I am an attorney who has been practicing law in York County, Pennsylvania for more than forty (40) years.

2. I was retained by the Executors of the Estate of Frank A. Nardo, Sr. to see that the provisions of Decedent's Will with respect to the disposition of real estate were faithfully followed, these provisions being set forth in Item Fourth of the Will dated October 13, 2000.

3. It was determined that there were three parcels of real estate subject to the provisions of said Will, valued by the appraisal of Daniel Wagner, MAI, which value was used by the Estate for federal and state inheritance tax purposes, and accepted by both governmental entities as follows:

    a. A 46-acre tract on the Marietta Pike - $525,000.00;

    b. The Lombard Road property - $825,000.00; and

    c. A residential lot in the Chapel Hill Development - $23,000.00.

4. Frank A. Nardo, Jr., James A. Nardo, Daniel W. Nardo, June A. Nardo-Harrison, Richard V. Nardo and Fiore L. Nardo were all given notice by the Executrices of the Estate, said

six and the two Executrices being all of the children of Decedent, that a meeting would be held in my office on January 8, 2003 at 9:30 a.m., at which time these three parcels would be offered for sale on the terms stated in the Will.

5. I then sent a letter dated January 3, 2003 to the six parties identified above, with copies to Dianne Cardello and Rosemary Frederick, the Executrices of the Estate, to confirm the parcels that would be offered for sale, the prices established for the same, and to describe the procedure that would be followed. A copy of that letter is attached hereto as **Exhibit "A"**.

6. All of the children of Decedent attended the meeting on January 8, 2003, except Richard, who executed a document stating that he was not interested in participating. At the beginning of this meeting, the procedures outlined in the Will were again reviewed.

7. I then passed an envelope to Frank A. Nardo, Jr., James A. Nardo and Daniel W. Nardo, which concealed three numbered slips and asked each to draw one of these slips to establish the order in which each would be allowed to exercise their rights of first refusal with respect to the three different parcels.

8. I then circulated a second envelope to Frank A. Nardo, Jr., James A. Nardo and Daniel W. Nardo, which concealed three other slips, each identifying one of the parcels being offered for sale and had these drawn to establish the sequence in which the properties would be offered.

9. We then went through the procedure stated in the Will, during the course of which James A. Nardo agreed to buy the Marietta property, Daniel W. Nardo agreed to buy the residential lot, and none of the three agreed to purchase the Lumbard Road property.

10. I then offered all of the other children the opportunity to purchase the Lombard Road property and none were interested.

11. I then declared that the rights of first refusal were discharged and stated that the Executrices were free to sell the real estate as they deemed best.

12. Subsequently, Daniel W. Nardo expressed his interest in purchasing the Lombard Road property and a sales agreement was negotiated and executed, which gave him the right to withdraw within a given period of time. He later exercised his right to withdraw, so that the parcel was back on the market, free from any restrictions imposed by Decedent's Will.

13. In conclusion, the terms of Decedent's Will were followed. The rights of first refusal were offered and either accepted or declined as stated above. No right of first refusal remains.

WITNESS:

_____        _____
                                        Albert G. Blakey, Esquire

Sworn and subscribed to
before me this ___ day
of _____, 2003.

_____
Notary Public

```
        NOTARIAL SEAL
ILEEN S. KRONE, Notary Public
    City of York, York County
My Commission Expires March 28, 2005
```

3

Albert G. Blakey
David Wm. Bupp
Donald B. Hoyt
Charles A. Rausch
Sara A. Austin
Stacey R. MacNeal
Penny V. Ayers
John J. Baranski, Jr.



Blakey, Yost, Bupp & Rausch, LLP

of counsel

Robert O. Beers
Donald H. Yost

January 3, 2003

Ms. June A. Nardo-Harrison
5232 Freter Road
Sykesville, MD 21784

Mr. Daniel W. Nardo
2908 Cape Horn Road
Red Lion, PA 17356

Mr. Richard V. Nardo
689 Hemenway
Marlboro, MA 01752

Mr. James A. Nardo
929 Carter Cove
Hummelstown, PA 17036

Mr. Fiore L. Nardo
1323 Quarry Lane
Lancaster, PA 17603

Frank A. Nardo, Jr., Esquire
STOCK AND LEADER
6th Floor
221 West Philadelphia Street
York, PA 17404

Re:   Estate of Frank A. Nardo, Sr. – Real Estate Disposition

Dear Ms. Nardo-Harrison and Gentlemen:

I write to follow up on the letter to all of you from Frank, Jr., dated December 18, 2002 regarding the proceeding to deal with your father's real estate in accordance with the terms of his will.

Prices for the three parcels, based upon the figures used in the federal estate tax return and the Pennsylvania inheritance tax return, which are, in turn, based upon the appraisal of Daniel Wagner, MAI, are:

    The 46-acre tract on the Marietta Pike - $525,000;
    The Lumbard Road property - $825,000; and
    The residential building lot in Chapel Hill Development - $23,000.

With a copy of this letter to each of you, I enclose copies of the proposed Deeds.

ALL-STATE LEGAL® EXHIBIT A

Frank A. Nardo Estate Heirs
January 3, 2003
Page 2

At the meeting schedule for January 8, 2003 at 9:30 a.m. in this office, we will determine, by lot, the order in which James, Daniel and Frank will have the opportunity to bid, and we will determine, by lot, the order in which the three parcels will be available for bid.

A successful bidder will be expected to execute an Agreement of Sale for the purchased tract in the form enclosed.

If anyone wants to stand aside from the process, they may do so by not coming to the meeting on January 8th, or by executing a waiver form that is also enclosed.

It is my intent to follow your father's directives as set forth in his will.

I look forward to seeing you on January 8th.

Very truly yours,

Albert G. Blakey

AGB/tsg

cc:    Ms. Diann Cardello
       Ms. Rosemary Frederick